ALEXANDER ET AL. *v.* THE NORTH-WESTERN CHRISTIAN
UNIVERSITY.

SUPREME COURT.—*Assignment of Error.*—*Superior Court.*—*Practice.*—An as-
signment as error, on appeal to the Supreme Court from the Superior
Court, that the latter court erred at general term in affirming its judg-
ment at special term, presents for decision all errors properly assigned
at general term.

INTERROGATORIES TO JURY.—*Answers.*—*General Verdict.*—Unless the facts
found specially by a jury trying a cause, in answer to interrogatories, are
inconsistent with their general verdict, the latter must stand.

PRINCIPAL AND AGENT.—*Real Estate Broker.*—*Pleading.*—*Instruction to Jury.*
—*Broker Acting for both Vendor and Vendee.*—In an action by a vendor
of certain real estate, to recover for moneys alleged to have been collected
by the defendant as the broker of the former, and unlawfully detained,
the defendant answered, that the plaintiff, with full knowledge that
the defendant was acting as the broker of the purchaser in making in-
vestments for the latter in real estate, had employed the defendant, at a
stipulated commission, to sell such real estate at a specified price; that he
had made such sale, receiving from the purchaser a sum exceeding the
price of the realty, had paid such price, less his commission, over to the
plaintiff, and had retained the excess as the price of his services ren-
dered to the purchaser in making the investment.

*Held,* that an instruction to the jury trying such cause, that such answer
admitted the possession and retention by the defendant of moneys re-
ceived by him from the sale of such real estate, was erroneous.

*Held,* also, that, in such case, the defendant might lawfully receive com-
pensation for his services from both vendor and vendee.

From the Marion Superior Court.

*J. T. Dye, A. C. Harris, J. E. McDonald, J. M. Butler,
F. B. McDonald* and *G. C. Butler*, for appellants.

*B. Harrison, C. C. Hines* and *W. H. H. Miller*, for ap-
pellee.

Howk, J.—The appellee, as plaintiff, sued the appellants,
as defendants, in the court below.

Appellee's complaint was in three paragraphs.

In the first paragraph of its complaint, the appellee
alleged, in substance, that on the — day of July, 1873,
the appellants were, and had ever since been, copartners

in business, under the firm name of G. W. Alexander & Co.; that on or about said day the appellee employed the appellants, as such copartners, to sell certain real estate of the appellee, upon a commission of one and one-half per centum, and the appellants undertook therefor to sell the same, and to procure purchasers therefor, and to pay the proceeds over to the appellee; that thereafter, the appellants did procure said real estate to be purchased by various persons, and did procure from appellee, for delivery to said purchasers, proper deeds, duly executed, conveying to said purchasers the several lots by them respectively purchased; that the appellants, since said sale, had reported to appellee, that said purchases and sales were made for the total aggregate sum of one hundred and eighteen thousand one hundred and thirty dollars, whereas, in truth and in fact, said sales were made by the appellants for a much larger sum, to wit, for the aggregate sum of one hundred and twenty-five thousand dollars, and the amount thereof, in promissory notes, bonds and other securities, and in cash, has been paid by the said several purchasers to the appellants as appellee's agents; that the appellants had accounted to appellee, and turned over, in money, notes, bonds and other securities, on said purchase-money, in all the sum of one hundred and sixteen thousand three hundred and six dollars and twenty-seven cents, and, on demand, had and still wholly failed and refused to account for, or to pay over, any part of the residue of said purchase-money; wherefore the appellee said that the appellants were justly indebted to appellee in the sum of nine thousand dollars, for which sum the appellee demanded judgment.

In the second paragraph of said complaint, the appellee alleged substantially the same facts as in the first paragraph, but with some difference in the phraseology thereof; and, in the conclusion of said second paragraph, it was alleged that the appellants wrongfully, falsely and fraudulently, with the intent to cheat and defraud the appellee,

had and still failed and refused to render a true and just account of the proceeds of the sales of said real estate, and, on demand, to turn over to the appellee the said notes, bonds, securities and moneys received by them as the appellee's agents; to the appellee's damage in the sum of nine thousand dollars. Wherefore, etc.

The third paragraph of the complaint is merely a common count, by the appellee, against the appellants, for the recovery of said sum of nine thousand dollars, as so much money had and received by the appellants for the use of the appellee, which was due and unpaid. Wherefore, etc.

To the appellee's complaint, the appellants answered specially, in a single paragraph. In giving the substance of this answer, we adopt substantially the abstract thereof, furnished by the learned counsel of the appellants, in their argument of this cause, in this court, as follows:

"The defendants answered specially, that, during the year 1873, they were largely engaged in business, as real estate brokers, and had a large acquaintance as such brokers, in this and other states; that in August, 1873, they learned the University proposed to put a large part of its *campus* in the market, as an addition to Indianapolis; that they then had a large number of customers residing abroad, who were seeking investments through them in city property; that, on the 27th of said month, they selected for some of their customers certain lots, aggregating in all eighteen thousand dollars, at the prices then fixed and established; that they soon after learned that they could furnish customers for a large number of lots, if the price was lowered fifteen per cent. And they then proposed, if the plaintiff would make sales at a discount of fifteen per cent., and also discount the purchases already made of eighteen thousand dollars in the same way, that, for an agreed commission of one and one-half per cent., they would agree 'to take, select immediately, and furnish buyers for, an amount in value of not less than one hundred thousand dollars, of said lots;' that this

proposition was accepted; that they immediately marked on a plat the lots they undertook to furnish buyers for, under their contract, which was agreed to by Dr. Jameson, acting for the University; that they had furnished buyers for all the lots so taken at said discount price; that the sales had been made, deeds, money and notes passed, according to the terms fixed, and they had fully accounted to the University for the agreed price of said lots, and paid over the proceeds, less their agreed commissions. And that the money received by them from their customers, over the said price agreed on, was paid to and received by them, as and for their compensation for selecting and purchasing said lots for them, and for other services, and not as purchase-money going to the University. The words of the answer are, 'And that any and all other money, received by them on account of such sales and purchases, over and above one and one-half per cent. commission paid by plaintiff, has been paid to them by their customers, as and for their commissions for purchasing said lots for them.' "

Appellee demurred to appellants' answer, for the want of sufficient facts therein to constitute a defence to the action, which was overruled; but no reply was filed to said answer.

The cause was tried by a jury, in the court below at special term, and a general verdict was returned for the appellee, assessing its damages in the sum of one thousand nine hundred and eighty-two dollars and fifty cents. And the jury also, under the direction of the court, at the request of the appellants, returned with their general verdict their special findings upon particular questions of fact, stated to them in writing, as follows:

"1. Did not the defendants, Alexander and Bronson, make a proposition, that if the proposition of The Builders and Manufacturers Association, to buy certain lands of the University, was accepted, they, said defendants, would select at once, and bind themselves to furnish buyers for,

$100,000.00 worth of the University lots, at a discount of 15 per cent. from the original prices asked, and that they would receive from the University, as consideration for said contract, 1½ per cent. commission?

"Answer. Yes.

"2. Did not Dr. Jameson afterward inform defendants that their proposition was 'all right,' and that it was accepted?

"Answer. Yes.

"3. Did not Dr. Jameson, on or about the 3d day of September, 1873, go to the office of Alexander and Bronson, and request them to select, and designate on a plat, the lots that they desired to select and furnish buyers for, under their said agreement?

"Answer. Yes.

"4. Did not Alexander and Bronson, at the request of Dr. Jameson, on or about the 3d day of September, 1873, select, and designate on a plat, the lots they desired to select and furnish buyers for, under their said agreement?

"Answer. Yes.

"5. Did not Dr. Jameson accept and take with him, from the office of Alexander and Bronson, the plat upon which defendants had selected and designated the lots they desired to select and furnish buyers for, under their said contract?

"Answer. Yes.

"6. Did not Alexander and Bronson, on or about the 27th of August, 1873, and before they made any contract to select, and furnish buyers for, lots, take and select, as purchasers for Mauzy, some lots on the original plat, at the full original price?

"Answer. Yes.

"7. Did not Dr. Jameson afterward lower the price of these Mauzy lots, and allow them to go in under the contract of Alexander and Bronson to select and furnish buyers for lots at a discount of 15 per cent. from the original price asked?

"Answer. Yes, for benefit of Mauzy.

" 8. Did not defendants show to Dr. Jameson the letter and dispatch from A. G. Mauzy, and the two dispatches from H. S. Walker, introduced in evidence, before Dr. Jameson received from defendants the plat upon which they had selected and marked the lots for which they were to furnish buyers?

"Answer. Yes.

" 9. Did not Dr. Jameson know, that defendants, Alexander and Bronson, were acting as purchasers for the Mauzys and H. S. Walker?

"Answer. Yes.

" 10. Have not Alexander and Bronson paid over and fully accounted for all that the lots sold by them amounted to at the discount price?

"Answer. Yes.

"11. Did not Dr. Jameson, on or about the 3d of September, 1873, and immediately after defendants had selected, and marked upon the plats, the lots for which they were to furnish buyers, request Alexander and Bronson not to sell any more lots at a discount of 15 per cent. from the original price asked?

"Answer. Yes."

And the appellants moved the court below, at special term, in writing, for judgment in their favor upon the special findings of facts by the jury, notwithstanding the general verdict; which motion was overruled, and to this decision the appellants excepted.

The appellants then moved the court below at special term, on written causes therefor, for a new trial of this action; and this motion having been overruled, and appellants' exception saved to this ruling, judgment was rendered on the general verdict.

From this judgment, an appeal was duly taken to the court below in general term. On the errors there assigned, the judgment of the court at special term was affirmed by the judgment of the court in general term, from

which latter judgment this appeal is now here prose-
cuted.

In this court, the appellants have assigned as error the
decision of the court below in general term, in affirming
the judgment of the court at special term. This assign-
ment of error presents for our consideration the questions
raised by the errors assigned by the appellants in the
court below in general term.

These alleged errors were as follows:

1st. That the court at special term had erred in over-
ruling the appellants' motion for judgment in their favor
on the special findings; and,

2d. That the court at special term had erred in over-
ruling the appellants' motion for a new trial.

Before we proceed to the consideration of the questions
presented by these alleged errors, we deem it necessary
to a proper and correct understanding of this cause, that
we should put together, in a connected and narrative form,
the facts of the case as contained in the special findings
of the jury. By applying the answers of the jury to the
questions submitted to them, and by using the affirmative,
instead of the interrogative, form of language, it will be
seen, that the jury specially found the following facts:

The appellants made a proposition, that, if the propo-
sition of The Builders and Manufacturers Association to
buy certain lands of the University was accepted, they,
the appellants, would select at once, and bind themselves
to furnish buyers for, one hundred thousand dollars"
worth of the University lots, at a discount of fifteen per
cent. from the original prices asked, and that they would
receive from the University, as consideration for said con-
tract, one and one-half per cent. commission. Dr. Jameson
afterward informed the appellants, that their proposition
was " all right," and that it was accepted. On or about
the 3d of September, 1873, Dr. Jameson went to the office
of the appellants, and requested them to select, and desig-
nate on a plat, the lots that they desired to select and

furnish buyers for, under their said agreement. At the request of Dr. Jameson, on or about the 3d of September, 1873, the appellants did select, and designate on a plat, the lots they desired to select and furnish buyers for, under their said agreement. Dr. Jameson accepted and took with him, from the appellants' office, the plat upon which the appellants had selected and designated the lots they desired to select and furnish buyers for, under their said contract. The appellants, on or about the 27th of August, 1873, and before they made any contract to select and furnish buyers for lots, took and selected, as purchasers for Mauzy, some lots on the original plat, at the full original price. Afterward, Dr. Jameson lowered the price of these Mauzy lots, "for the benefit of Mauzy," and allowed them to go in under the contract of the appellants to select and furnish buyers for lots at a discount of fifteen per cent. from the original price asked. The appellants showed to Dr. Jameson the letter and dispatch from A. G. Mauzy, and the two dispatches from H. S. Walker, introduced in evidence, before Dr. Jameson received from appellants the plat upon which they had selected and marked the lots for which they were to furnish buyers. Dr. Jameson knew, that the appellants were acting as purchasers for the Mauzys and H. S. Walker. The appellants had paid over, and fully accounted for, all that the lots sold by them amounted to at the discount price. On or about the 3d of September, 1873, and immediately after the appellants had selected, and marked upon the plats, the lots for which they were to furnish buyers, Dr. Jameson requested the appellants not to sell any more lots at a discount of fifteen per cent. from the original price asked.

These were the facts specially found by the jury trying this cause.

It is manifest, we think, that the facts thus found were not inconsistent with the general verdict of the jury. Every word, paragraph and sentence of the special

findings may have been, and doubtless were, strictly and literally true; but unless the special findings of the facts are inconsistent with the general verdict, the former will not control the latter in any way. 2 R. S. 1876, p. 172, sec. 337; *Thompson* v. *The Cincinnati, etc., Railroad Co.,* 54 Ind. 197.

In the case at bar, we utterly fail to see any inconsistency between the special findings of the facts and the general verdict. And, therefore, we hold, that no error was committed by the court below, in overruling the appellants' motion for judgment in their favor on the special findings of facts, notwithstanding the general verdict.

The second alleged error, assigned by the appellants in the court below in general term, was the overruling of their motion for a new trial. In this motion, many causes for such new trial, chiefly alleged errors of law occurring at the trial, were assigned by the appellants. Without setting out these causes at length, we will only consider such of them as the appellants have discussed in their argument of this cause in this court; and, in so doing, we will take up and dispose of these causes in the same order in which their learned attorneys have presented them.

The first alleged error of law at the trial, complained of in argument by appellants' counsel, was the giving by the court at special term, of its own motion, of the second instruction to the jury.

The counsel say of this instruction:

" The second instruction is a prejudiced statement of the defence. It says, the answer admits the possession and retention of moneys, which moneys were received by them on the sale of the property of the plaintiff, etc. Now, it does not admit it was received 'on the sale,' but says it was 'paid to them by their customers, as and for their commissions for purchasing said lots for them.' "

It seems to us, that this instruction is open to the criti-

cism of the appellants' counsel; not that the statement of the defence is prejudiced, in the ordinary acceptation of the term, for this we do not believe, but that the instruction did not contain a full and entirely fair statement of the defence.

The gist of the appellants' defence, in this case, as we gather the same from their answer, may be thus stated:

That the appellants were real estate brokers of the city of Indianapolis, and as such were employed by the appellee to sell its lots in said city, but not as the appellee's agents, in the usual sense of the term; that they were employed under a special contract, by the terms of which the prices of the lots were fixed by the appellee, and they were not entrusted nor required by the appellee to get any higher price therefor; that, at the same time, they were acting as agents for non-resident parties, in investing moneys for them in city lots in Indianapolis, which fact was known to the appellee's officers and agents; that such investments for their non-resident customers were made by them in certain of the appellee's lots, which they had agreed to furnish buyers for, at the prices fixed thereon by appellee; and that they had fully paid and accounted to the appellee for the full sum and price of all the lots by them sold, at the price fixed and agreed upon by and between them and the appellee; and that any and all other money received by them on account of such sales and purchases, over and above the one and one-half per cent. commission paid by appellee, had been paid to them by their customers, as and for their commissions for purchasing said lots for them.

It will readily be seen, from this statement of the defence, that the appellants' answer, instead of admitting, as the court informed the jury, that the moneys in controversy were received by the appellants on the sales of the appellee's property, expressly averred that all these moneys had been paid to the appellants by their customers, as and for their commissions for purchasing said lots

for them. It seems to us, therefore, that the appellants have just cause of complaint against the court .below at special term, on account of this erroneous statement of their answer to the jury trying the cause.

The appellants' counsel also complain of the second .instruction of the court to the jury, because it contained, as they allege, other erroneous statements of the defence in this action. But we do not think it necessary or important for us to make any further examination of these alleged erroneous statements of the defence. We prefer to come at once to the consideration of the question which we regard as the important and controlling question in this case.

In our opinion, that question may be thus stated :

Under the peculiar facts of this case, as stated by the appellants, and which the evidence at least tended to establish, where the appellants negotiated sales between their own customers and the appellee for certain of the appellee's lots, and on which sales they had received from the appellee an agreed commission, might the appellants in such cases lawfully charge and receive commissions from their said customers, for their services in purchasing the lots for their said customers ?

Ordinarily, the law will not allow the same man to act as the agent of both the vendor and purchaser of property.

" The law does not allow a man to assume relations so essentially inconsistent and repugnant to each other. The ·duty of an agent for a vendor is to sell the property at the highest price ; of the agent of the purchaser to buy it for the lowest." *Farnsworth* v. *Hemmer*, 1 Allen, 494. See Story Agency, sec. 31, and *Rupp* v. *Sampson*, 16 Gray, 398.

But, while this may be regarded as good and well-·settled law, yet it is not applicable to a case in which a man is acting as the agent of both the vendor and pur-

chaser, with the authority or consent of the parties interested.

Let us see, now, what the case is, which the evidence on the trial tended to establish. The appellee had platted its *campus* into city lots, and put them on the market for sale. The appellants were real estate brokers, and had a large acquaintance in this and other states. Dr. Jameson was the authorized agent of the appellee in the sale of its lots. He sought the services of the appellants in the sale of said lots, because, he says, " I understood he," appellant Alexander, " had customers." It may be assumed, therefore, that the appellee had knowledge of the fact, that the appellants were the agents of their " customers," and that it was consenting thereto. The prices of the appellee's lots were fixed absolutely between the appellants and the appellee. The appellants were neither required nor expected to sell the lots at any other than the fixed price. It was not their duty to sell the lots at the highest price, but their agreement was, to sell one hundred thousand dollars' worth, at the fixed price. No confidence or trust was reposed in the appellants by the appellee.

Says Dr. Jameson :

" The arrangement was, that Mr. Wallace was to assist me and make out the papers, and receive the consideration of each sale as made; Mr. Alexander," one of the appellants, " was merely to negotiate sales."

Certainly, it seems to us, there was nothing in this limited and confined agency which would prevent the appellants, as such agents of the appellee, from acting also as the agents of the purchasers of appellee's lots. Under such an agency, there could be no possible danger, that the rights of the appellee, as vendor, could be sacrificed by the appellants, to promote the interests of the purchasers of said lots. The appellee knew that the appellants were acting as the agents of the non-resident purchasers of lots. It does not appear, that the appellee

objected to the agency of the appellants for such non-resident purchasers, and, therefore, the inference is, it consented thereto. There was no concealment whatever, by the appellants from the appellee, of the fact of their agency for their "non-resident customers." The jury found specially, that the appellee knew, that the appellants "were acting as purchasers for the Manzys and H. S. Walker," their non-resident customers. It can not be said, therefore, with truth or accuracy, that the actions of the appellants as the agents of their non-resident customers, in the sale and purchase of appellee's lots, were any breach or violation of the trust and confidence reposed in them by the appellee. In such a case, our conclusion is, that the appellants might lawfully receive commissions from their non-resident customers, for services in making investments for them in the appellee's lots. And if these commissions, so received by the appellants, were in fact what the evidence before the jury tended to prove they were, the subject-matter of this action, in our opinion, the appellee has no cause of action against the appellants for the recovery of those commissions. *Rowe* v. *Stevens*, 53 N. Y. 621; *Siegel* v. *Gould*, 7 Lansing, 177; *Rupp* v. *Sampson*, 16 Gray, 398, and *Herman* v. *Martineau*, 1 Wis. 151.

At the proper time, the appellants requested the court below, at special term, to give the jury trying the cause certain written instructions, and among others the following:

"1. An agent, in the ordinary acceptance of the term, can not be the agent of two parties, having adverse interests, without the consent of both; because when he is entrusted with a discretion in buying or selling, he must exercise that discretion and judgment for the benefit of the person employing him. But where he is not invested with a discretion by one of the parties, but his instructions are fixed and determined by the one, he may then, without any violation of his duties, receive an employ--

ment from the other party having adverse interests, and negotiate the affair between the parties to a conclusion; because, as to one of them, he can not change the terms of the proposal, and, therefore, he may act for another, in accepting the terms so fixed and determined. In such a case, his engagement is in a manner two-fold, and in this capacity he may bring about the sale or exchange desired by both parties, and claim a compensation from each."

"2. So that, if you shall find from the evidence, that Dr. Jameson, as agent of the plaintiff, agreed with the defendants, that they should take and sell for plaintiff certain of the lots, then being offered for sale by plaintiff, for a certain and definite price fixed and agreed upon by and between the defendants and said Jameson, for which the defendants were to take and receive an agreed commission, viz., one and one-half per cent. on the purchase-price, and that this agreement was made within the scope of Dr. Jameson's authority, as agent of the plaintiff, and that defendants have sold said lots for the agreed price, and have fully accounted to plaintiff for the proceeds received therefor, less the stipulated commission, then they are not liable to plaintiff in this action, although they may have received from the purchasers of said lots a sum for conducting the negotiations, receiving and paying out the notes and money, and superintending the transactions, and receiving the deeds and other papers for them."

The court below, at special term, refused to give the jury the foregoing instructions, nor did the court give the jury any instructions of similar tenor and purport. To the decision of the court, in refusing said instructions, the appellants excepted, and assigned the same as alleged error of law occurring at the trial, as a cause for a new trial, in their motion therefor. For the reasons already given, it seems to us that these instructions were applicable to the case which the evidence tended to establish,

and should have been given, as requested, to the jury trying the cause.

In our opinion, the court below, at special term, erred in overruling the appellants' motion for a new trial; and, for this reason, we hold that the court in general term also erred in affirming the judgment of the court at special term.

The judgment of the court below, in general term, is reversed, at the appellee's costs, and the cause is remanded with instructions to reverse the judgment of the court at special term, with costs, and to remand the cause for a new trial, in accordance with this opinion.