McIlvaine, J.
This ease presents the single question. Can a real estate broker, who assumes to aid both contracting parties in making an exchange of real estate, recover compensation for his services from either, upon an express promise to pay, in a case where each principal had full knowledge of and assented to the double employment %
It has been decided (Rupp v. Sampson, 16 Gray, 398, and Siegel v. Gould, 7 Lans. 177), and is not doubted, that such broker may recover from both or either where his employment was merely to bring the parties together; and it is equally clear, both upon principle and authority, that in case of such double employment he can recover from neither, where his employment by either is concealed from or not assented to by the other. Several reasons may be given for this rule. In law, as in morals, it may be stated that, as a principle, no servant can serve two masters, for either he will hate the one and love the other, or else he will hold to the one and despise the other. Luke, 16, 13. Unless the principal contracts for less, the agent is bound to serve him with all his skill, judgment and discretion. The agent cannot divide this duty and give part to another. Therefore, by engaging with the second, he forfeits his right to compensation from the one who first employed him. By the second engagement, the agent, if he does not in fact disable himself from rendering to the, first employer the full quantum of service contracted for, at' least tempts himself not to do so. And for the same reason, he cannot recover from the second employer, who is ignorant of the first engagement. And if the second employer has knowledge of the first engagement, then both he and the agent are guilty of the wrong committed against the first employer, and the law *400 will not enforce an executory contract entered into in fraud of the rights of the first employer. It is no answer, to say, tha, the second employer having knowledge of the first employment should be held liable on his promise, because he could not be defrauded in the transaction. The contract itself is void as against public policy and good morals, and both parties thereto being in pari delicto, the law will leave them as it finds them. Ex dolo malo non oritur actio.
The non-liability of the second employer having knowledge of the first employment has been maintained in the following cases: Farnsworth v. Hemmer, 1 Allen, 494; Walker v. Osgood, 98 Mass. 348; Smith v. Townsend, 109 Mass. 500 ; Rice v. Wood, 113 Mass. 133; Bollman v. Loomis, 41 Conn., 581; Everhart v. Searle, 71 Pa. St. 256 ; Morrison v. Thompson, 9 Q. B. (L. R.) 480. But in each of these cases it is strongly intimated, if not distinctly announced, that a recovery may be had by such agent, when he acted with the knowledge and consent of both principals. In Lynch v. Fallon, 11 R. I. 311, the same general doctrine is held, and it it said, that a broker acting at once for both vendor and purchaser, assumes a double agency disapproved of by law, and which, if exercised without the full knowledge and free con sent of both parties, is not to be tolerated. The same, in Meyer v. Hanchett, 43 Wis. 246, wherein the question w-hether sucl double agency is consistent with public policy, though exer cised with the consent of both parties, is left undecided, but it is decided that mere knowledge of such double agency, without actual consent on the part of the principals, will not entitle the agent to commissions.
The validity of such contracts of double agency, where ail the principals were fully advised and consented to the double employment, was more directly before the courts, and affirmed in the following cases: 35 N. Y. Super. Ct. 189; Rowe v. Stevens, 53 N. Y. 621; Alexander v. N. W. C. University, 57 Ind. 466; Joslin v. Cowee, 56 N. Y. 626; Adams Mining Co. v. Senter, 26 Mich. 73; Fitzsimmons v. Southwestern Ex. Co., 40 Geo. 330; Rolling Stock Co. v. Railroad, 34 Ohio *401 St. 450; Pugsley v. Murray, 4 E. D. Smith, 245. See also note by Bennett to Lynch v. Fallon, 16 Am. L. Reg. 333.
Raisin v. Clark, 41 Md. 158, holds the contrary doctrine, if knowledge and consent on the part of the first employer is to be regarded as fully proved. Other cases bearing more or less directly on the point might be cited; but enough are given to show a want of harmony in the decisions ; yet we think the decided current of authority is in favor of the validity of such contracts where the consent of both principals to such double agency is clearly proved.
We admit that all such transactions should be regarded with suspicion ; but where full knowledge and consent of all parties interested are clearly shown we know of no public policy, or principle of sound morality, which can be said to be violated. It seems to us rather that public policy requires that contracts, faÍ7-ly entered into by parties competent to contract, should be enforced where no public law has been violated, and no corrupt purpose or end is sought to be accomplished. True, such agent may not be able to serve each of his principals with all his skill and energy. He may not be able to obtain for his vendor principal the highest price which could be obtained, or for the purchaser the lowest price for which it could be purchased. But he can render to each a service entirely free from falsehood and fraud ; a fair and valuable service in which his best judgment and his soundest discretion are fully and freely exercised. And in such case, such service is all that either of his principals contracted for. Undoubtedly, if two persons desire to negotiate an exchange or a bargain and sale of property, they may agree to delegate to a third person the power to fix the terms, and no suspicion of a violated public policy would arise. It may be said that such third person is an arbitrator chosen to settle differences between his employers, an agency or office greatly favored in the law. And so it is. But what is the distinction between that employment, and the one in the present case, which should cause the law to favor the former and abhor the latter ? I can see none.
True, in the case put, the contracting parties deal directly *402 with each other, and in the ease at bar their minds meet through the medium of a third person in whose judgment and discretion they mutually repose confidence. His judgment and discretion are invoked by each to aid in fixing the terms of a contract between them. And after the terms are thus adjusted through the aid of their mutual agent, and ratified by the parties, in the free exercise of their own volitions, to hold that the relation between such agent and either of his principals is in violation" of a sound public policy supposed to rest on some moral abstraction, would be a refinement in legal ethics too subtle for my comprehension.
Of course, to relieve such double agent from suspicion that inconsistent duties have been assumed, which prima facie will be presumed, it is necessary that it should appear that knowledge of every circumstance connected with his employment by ■either should be communicated to the other, in so far as the same would naturally affect his action; but when that is done, and ■free assent is given by each principal to the double relation of the agent, the right of such agent to compensation cannot be denied on any just principle of morals or of law.
The refusal of the court of common pleas to charge as requested, and the second proposition given, if not plainly in conflict with the views above expressed, were at least so susceptible of such construction, that the jury may have been misled. Hence, we think the district court did not err in reversing the judgment.

Judgment of district' eourt affirmed.

Lonowosth, J., dissented.