ADOLPH HERMAN, *Plaintiff in Error*,

*vs.*

PETER MARTINEAU, *Defendant in Error*.

ERROR TO MILWAUKEE COUNTY COURT.

M. agreed with H., to pay him $10 if he would find him a tenant to whom he (M.) could let his farm. C. also agreed with H. to pay him $5.00 if he would find or procure for him a farm, which he might rent. M. and C. were brought together by the procurement of H., and they then consummated a contract for letting of the farm.

Held that this did not constitute an "*agency*" on the part of H.

Held also, that the fact that H. was to be paid by the tenant, for finding him the farm to rent, was no objection to his recovery of M.

This was an action of assumpsit brought in a Justice's Court, to recover ten dollars damages, for the services of the plaintiff, Herman, in procuring a tenant for the farm of the defendant, and he the defendant, pleaded the general issue, and on the trial before the justice, the following testimony was produced, as appears by the justice's return.

Henry Bielfeldt, a witness produced and sworn, and examined by the plaintiff, testified as follows: " I

know the parties. The papers were drawn up by Mr. Martineau and tenant of his farm. The plaintiff was there ; he came in with him. The leases were signed by Mr. Martineau and the lessee, and I believe I witnessed them. When the papers were signed and delivered, the plaintiff went to defendant, and said 'I want my ten dollars.' Mr. Martineau answered, he was short of money, but he would pay him in five or six weeks. The ten dollars was for procuring a tenant for Mr. Martineau's land. This took place four or five months ago. The leases were made, signed and delivered in my office, one part to each party.

On cross-examination, the witness further testified, Mr. Martineau, Mr. Herman, and tenant, were in the office at the time. Mr. Herman was not to share with me the ten dollars. Mr. Herman did not say he would go bail for tenant, and if tenant paid, defendant would pay him the ten dollars. There was other conversation, but I did not hear it."

The plaintiff admitted that he was to receive five dollars from the person who became Mr. Martineau's tenant, for procuring a farm for him to rent, and that he did procure Mr. Martineau's farm to be rented to said tenant, in accordance with such understanding, and has received in part payment of said five dollars, about two dollars and eighty-four cents.

No evidence was offered on the part of the defendant, and the justice, upon the evidence aforesaid, held, that it was insufficient to support the plaintiff's declaration, and that it showed the plaintiff to have been agent of the defendant and another in the same transaction, and the plaintiff was not, therefore, entitled to recover for his services for the defendant in such transaction, and rendered judgment for the defendant.

The cause was removed by the plaintiff by certiorari, to the County Court for Milwaukee county, when the judgment of the justice was affirmed, with costs ; to reverse which judgment of the County Court, this writ of error is brought.

*Watkins & Stark,* for the plaintiff in error.

1. The judgment of the justice is directly opposed to all the evidence, and must, therefore, be set aside. The plaintiff showed an express promise by the defendant to pay him $10 for services acknowledged, and neither the promise nor the rendering of the services is disputed or denied. *Nicoll vs. Dunlap,* 2 *John.* 195; *Kidder vs. Townsend,* 3 *id.* 434; *Dodge vs. Coddington,* 3 *id.* 146.

2. The employment of the plaintiff by the tenant of the defendant, as disclosed in this case, was perfectly consistent with his duty to the defendant. The plaintiff claims of the defendant for services in " procuring a tenant for his farm." He was employed and paid by the tenant for " procuring a farm for him (the tenant) to rent."

3. The justice erred in holding, upon the evidence, that the relation of the plaintiff to the defendant and his tenant, released the defendant from all legal obligation to keep his express promise (and such is his holding in effect).

*a.* There was and could be no breach of trust or confidence. Plaintiff's undertaking and services were limited to the men " procuring a tenant for the farm " of the defendant, to whom the defendant might, and as the evidence shows, actually did, rent the same.

*b.* Plaintiff had no interest in the matter adverse to the defendant, by reason of his employment by the

tenant.  On the contrary, the greater his zeal in procuring a farm for the tenant, the more efficient he would be in the discharge of his duty to the defendant.

c. The defendant required a tenant for his farm. The tenant wanted to hire a farm.  They severally employ the plaintiff as procurator.  He discharged faithfully his simple duty, by bringing to the defendant one who wished to hire, and to the tenant one who wished to let, and they bargained and contracted for themselves.

4. The evidence showed the plaintiff to have performed the mere office of procurator, informer, or intelligence-giver for the defendant and his tenant.

A., a servant seeking employment, employs B., the keeper of an intelligence-office, to find him a place. B. is, at the same time, solicited by C., in want of servants, to find him some one whom he may employ. B. acting for both parties, brings A. and C. together, and they, mutually agreeing, become servant and master.  Is there any doubt that B. can legally claim compensation from both A. and C. for his services above mentioned ?

Or again : A. says to B., find me a man to whom I can let my farm, and I will give you $10.00.   C. also applies to B. to find him a farm which he can hire, and promises B. $5.00 for so doing.   B., consulting the interests of both A. and C., introduces them to each other.   A. and C. contract together, and, agreeing upon terms, A. rents his farm to C.   On what principle can B., the simple procurator or intelligencer in this latter case, be debarred from claiming and recovering the promised compensation of both A. and C. ?

Such was the relation of the parties in the case at

bar. The plaintiff was neither employed by the defendant to let his farm; nor by the tenant to hire it or any other. But simply and merely, as the evidence in the plainest terms shows, as an informer or intelligencer, "to procure a tenant for the farm" on the one hand, and "a farm for the tenant to rent," on the other; leaving the tenant and defendant to bargain and contract for themselves. And the evidence shows, that accordingly the defendant and tenant did contract for themselves, and execute leases, drawn by the defendant in the office of the witness Bielfeldt.

5. The defendant had no agent in the letting of his land, but contracted himself with his tenant personally, and is presumed to have known and secured his own interest, and to have acted upon his own risk. He could not have avoided his contract, by reason of any conduct of the plaintiff in the course of his employment by him, which is disclosed by the evidence.

No fraud, misrepresentation, or injury, either actual, probable or presumptive to the defendant, by the plaintiff, is asserted by the defendant, or appears, or can legally or justly be inferred from the evidence.

6. The justice erred most of all, in refusing to render judgment for the plaintiff, for his well-earned and promised compensation for services fully performed, at the request of the defendant, and to his satisfaction, expressed when the services were completed. All of which stands clearly proved and undisputed, as appears by the justice's return of the evidence.

*Austin & Dunn*, attorneys for defendant in error.

*Peter Yates*, of counsel.

1. The agent of one party in a transaction, cannot

legally act for the other party, except when his principal is cognizant of the fact, and assents to his acts, with a full knowledge of all the circumstances.

If he does so, the law raises a presumption of fraud upon the rights of the principal, and of unfaithfulness to his interests. This rule of law is but a transcript of the doctrine of Holy Writ, that " no man can serve two masters." *Story on Agency*, § 210–11 ; *Dunlap's Paley on Agency*, 3d Am. Ed. p. 33, note 3. Also id. p. 10, vol. 1 ; *Livermore on Agency*, 416 *et seq.* ; *Adams' Equity*, 180–2–3.

2. It is no answer to the application of this principle to the case in hand, that the acts of the plaintiff were assented to, and adopted by the defendant since, at the time of the completion of the bargain for renting the farm, the defendant did not know that the plaintiff had been acting as the agent of the person to whom the farm was rented. The consequences of such misconduct on the part of the agent might not be felt by the principal until some time after its occurrence, and he could not, of .course, charge the agent with a breach of duty, until the discovery of the facts constituting such breach of duty. *Story on Agency*, § 210 ; 4 *Howard's R.* 503, 554, *et seq.*

3. If the law forbids an agent acting for both parties in the same transaction, the agent cannot, of course, recover any compensation for the acts of such agency. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. *Cowper*, 343 ; 17 *Mass.* 262 ; 1 *Denio*, 170.

4. The justice in his return to the certiorari in this case, omits to certify that said return contains *all the evidence* given before him ; and in case this court should think that the evidence returned is not suffici-

ent, taken alone, to support the judgment of the jus-
tice, it is to presume that additional evidence was
given, sufficient to sustain it.   5 *Barb. N. Y. R.* 608 ;
21 *Wend.* 305 ; 3 *Hill*, 75.   *Yates* cited 4 *Wend.* 223 ;
13 *Mass.* 272 ; *Stetson vs. Kempton*, 1 *Denio*, 141 ;
13 *Johns.* 445 ; 4 *Cush.* 543.

*By the Court*, CRAWFORD, J.   We can discern no
reason why the plaintiff in error should not have re-
covered in this suit.   He was employed by the de-
fendant in error to do a particular act, namely, to
obtain for him a tenant for his farm, but no discre-
tion or control over the conditions of the letting of
the farm was entrusted to him.   The procuring of a
person, willing to rent the farm, and with whom
Martineau himself, agreed upon and settled the con-
tract of letting, was a complete performance of his
agreement.   There was no opportunity here for the
violation of good faith on the part of Herman, and it
was entirely consistent with his duty to Martineau,
that he could, at the same time, and in the same trans-
action, perform a service, and thereby earn a com-
pensation from a third party.   The test in such cases
is, whether the interests of one of the parties for
whom the person acts, are antagonistic to those of the
other party ; for if they be, he could not be said to
act " with a sole regard to the interests of his prin-
cipal."

We have looked into the books cited by the counsel
for the defendant in error, but have seen nothing
which compels us to take a different view of this case
than that which is given above.

Wherever the agent's duty to his principal stands
in direct opposition to, or, indeed, where it even re-

motely conflicts with his own interests, or those of another party, the law, having a just regard for human frailty, will not permit him to act, nor will it hold his acts obligatory on the principal.

It is correctly said, by Judge Story, in his work on agency, that " with reference to christian morals, no man can faithfully serve two masters *whose interests are in conflict.*" This is a succinct exposition of the rule which may be gathered from all the adjudicated cases, and the reason is, that a due and sole regard to the interests of one of the parties would necessarily involve a total disregard of the interests of the other ; hence " an agent of the seller cannot become the agent of the purchaser in the same transaction." But in the case at bar, by the interposition of Herman, the defendant in error obtained a person who took a lease of the farm, on terms satisfactory to both parties, and the lessee also, was benefitted by obtaining an opportunity to rent the farm of Martineau.; their interests, so far as Herman had anything to do with such interests, were somewhat identical ; they were not in conflict. The justice of the peace before whom the case was tried, should have given judgment for the plaintiff, and the County Court erred in affirming the judgment which was rendered by the justice.

The judgment of the County Court must be reversed, and the cause remanded for a new trial.