## KELLY vs. PHELPS.

### March 19 — April 4, 1883.

AGENCY. *(1) When agent entitled to commissions on sales: contract construed. (2) Notice of dissent from act done after revocation. (3) Evidence of customary compensation, when admissible.*

1. Defendant by letter authorized the plaintiff to sell 500 cords of maple wood at $6.25 and 500 cords of beech at $5.50, and agreed to pay commissions on sales. Afterwards defendant wrote to plaintiff: "you can close the sale when you can get $6.25 and $5.25; there will be about 100 cords dry wood, mostly maple;" and, later: "as regards the wood, would not sell the seasoned without selling the green; want to sell it altogether." *Held:*

    (1) The plaintiff was not required by the last letter to sell all of the wood in one lot, but merely to sell the dry and green wood together in such proportions that the whole of the wood should be sold at the specified prices.

    (2) If the plaintiff produced customers ready and willing to purchase the wood at the prices named, before revocation of his authority, he was entitled to commissions on the amount such purchasers would have taken, although the defendant refused to deliver the wood. It was not necessary that the customers should have been bound by a contract, valid under the statute of frauds, to take the wood.

2. After revocation of an agent's authority, the principal is not bound, *as between himself and the agent,* to notify the latter of his dissent from acts done by such agent in pursuance of the original authority.

3. Where the plaintiff claims compensation for services under an express contract fixing the amount, and such contract is denied and the evidence is conflicting, evidence offered by the defendant to show the customary compensation for such services should be admitted.

APPEAL from the Circuit Court for *Racine* County.

This is an action to recover commissions on sales of wood alleged to have been made by the plaintiff for the defendant at his request. The plaintiff resides at Racine, in this state, and the defendant resides in Michigan. In 1881 the defendant desired to sell about 1,000 cords of wood, and under date

of February 6th in that year wrote to the plaintiff as follows: "At what price can you sell 600 cords of beech and 250 cords of maple, to be delivered in May. Will you please do me the favor, and let me know as soon as convenient." Under date of February 13, 1881, he again wrote to the plaintiff as follows: "In regard to the wood, if you can sell the maple at $6.25 and beech at $5.50, you can sell 1,000 cords for me; one half of each; all sawed body wood; will pay you commissions on same." Considerable correspondence between the parties was had, from which it would seem that the plaintiff was endeavoring to sell the wood, but was unable to sell at the price asked. Thereupon, under date of March 2, 1881, the defendant wrote him: "You can close the sale when you can get $6.25 and $5.25; there will be about 100 cords dry wood, mostly maple." Under date of March 19th, plaintiff notified defendant by letter that he had sold to one Billings 250 cords beech and maple, to be delivered in May at prices named; and also forwarded to the defendant a written contract for the sale to J. I. Case & Co. of 250 cords more. The defendant replied, under date of March 26th, as follows: "As regards the wood, would not sell the seasoned without selling the green; want to sell it altogether." Plaintiff replied by letter, dated March 28th, that the sales included as much green as dry wood. The wood was not delivered on these sales. The defendant testified that on March 31st he revoked the plaintiff's authority to sell wood for him. The plaintiff denies that he did so. April 9th plaintiff wrote to defendant that "the 1,000 cords of wood is all sold at $5.25 and $6.25." The evidence of the sale of the remaining 500 cords is a written contract, dated April 11th, signed by the plaintiff as agent for the defendant of the one part, and one James R. Morris of the other part. Also, under date of April 11th, plaintiff reported to the defendant the sales made by him, as follows: "Case & Co., 250 cords, beech and maple; J. R. Morris, 500 cords, one half each; D. Billings, 250 cords

beech and maple,— all at the prices you named." Defendant made no reply to the April letters. The plaintiff had a verdict for his commission for selling 1,000 cords, and judgment was entered for the sum so assessed by the jury. The defendant appealed from the judgment.

For the appellant there was a brief by *H. V. Van Pelt* and *Fish & Dodge,* and oral argument by *Mr. Fish.* To the point that it is always admissible where there is controversy about amount of compensation to be paid, to prove reasonable and customary compensation, as bearing upon the probability of the agreement made, they cited: *Swain v. Cheney,* 41 N. H., 232; *Kidder v. Smith,* 34 Vt., 294; Abbott's Trial Ev., 305, 306; *Booth v. Bierce,* 38 N. Y., 463; *Sussdorff v. Schmidt,* 55 id., 319.

*Edwin White Moore,* for the respondent, argued, *inter alia,* that the failure of the appellant to object when notified of the completion of the sale by the respondent amounted to a ratification. Story on Agency, secs. 255, 256, 258; *Kentucky Bank v. Combs,* 7 Pa. St., 543; *Curry v. Hale,* 15 W. Va., 867; *Kehlor v. Kemble,* 26 La. Ann., 713; *McEwen v. Kerfoot,* 37 Ill., 530; *Hanks v. Drake,* 49 Barb., 186; *Ward v. Warfield,* 3 La. Ann., 468. A broker is entitled to his commissions when he has secured a purchaser ready and willing to complete the purchase on the terms stipulated. *Dolan v. Scanlon,* 57 Cal., 261; *McGavock v. Woodlief,* 20 How., 221; *Heinrich v. Korn,* 4 Daly, 75; *Hart v. Hoffman,* 44 How. Pr., 168.

LYON, J. The authority to the plaintiff to sell the defendant's wood is found in the letter of the defendant of February 13th, the price being modified by the letter of March 2d. The testimony tends to show that plaintiff made contracts for the sale of 500 cords before any further modification of plaintiff's authority was attempted. It is contended on behalf of the defendant that the letter of March 26th required

the plaintiff to sell all of the wood in one lot, and consequently deprived him of authority to dispose of the same in parcels.   If that is so, it could have no effect upon sales made before that letter was received.   The previous letters, under which it is claimed that the 500 cords were sold to Case & Co. and Billings, contained no such restriction upon the power of the plaintiff, and if he made those sales, as he claims, he is entitled to his commissions thereon.   But we do not think the letter of March 26th admits of the construction contended for.   We think the fair and reasonable construction of it is that the dry and green wood should be sold together in such proportions that the whole of the wood should be sold at the specified prices.   The dry wood being the most valuable and finding a readier sale, would, if sold with it, facilitate the sale of the green wood.   This, we think, is the plain and obvious meaning of the letter of March 26th.

If the plaintiff produced customers ready and willing to purchase the wood at the specified prices, before revocation of his authority, he is entitled to his commissions on the amount those customers would have taken, although the defendant refused to deliver the wood.   To entitle him to his commissions we do not think it essential that the plaintiff should have entered into written contracts for the defendant with such customers in order to bind them under the statute of frauds.   It is sufficient if the customers were ready and willing to perform their verbal contracts with the plaintiff to purchase the wood.   It was substantially so held in the late case of *O'Connor v. Semple, ante,* p. 243.

Thus far our views seem to accord with those of the learned circuit judge, expressed in his instructions to the jury.   But he gave one instruction which we think erroneous.   It is in these words: " If the defendant revoked the agency of the plaintiff, and the plaintiff, notwithstanding such revocation, went on and completed the sale of the wood, and immediately thereafter notified the defendant thereof,

the defendant was bound to give the plaintiff notice of his dissent within a reasonable time thereafter; otherwise he must be held to have acquiesced in and ratified the acts of the plaintiff, and will be liable for his commissions. Such dissent on the part of the defendant must have been clear and positive." This instruction applies the rule of law which binds the principal, in certain cases, to a third person for the acts of a former agent whose agency has been revoked, to a controversy between the principal and such former agent. If, after revocation, the former agent enter into a contract for the principal, within the scope of his original authority, with one who had dealt with the agent as such before the revocation, and who makes the contract in good faith, without notice of the revocation, the principal will be bound to such third party, or at least he will be bound unless he promptly repudiate the act of his former agent. The rule rests entirely upon the good faith of the person so dealing with the former agent, and holds the principal to liability or to the duty of prompt action, because he had given credit to his agent by appointing him, and thus put it in the power of the latter to commit the fraud.

But when it comes to a transaction between the principal and the former agent, the reason of the rule utterly fails, and the rule has no application. Should a stranger, without authority, assume to act as the agent of another, it would be intolerable if such other would be bound to compensate the interloper for his services unless he gave the latter "notice of his dissent within a reasonable time thereafter." The law imposes no such obligation upon business men in respect to those who, without authority, interfere in their affairs. If the defendant revoked the authority of the plaintiff to sell wood for him, such revocation was a perpetual notice to the plaintiff that he dissented from each and every act of assumed agency, and as to him no other notice of dissent is required. The jury may have found the revo-

Lynch vs. Eastern, La Fayette & Mississippi R'y Co. and others, imp.

cation, and still, under the instruction, the plaintiff would be entitled to recover commissions on the wood thereafter sold, because the defendant did not dissent when notified of the sale. This is error. We think the record discloses another error, also fatal to the judgment. The plaintiff testified to an express contract that his commission on sales should be five per cent. This was substantially denied by the defendant. If the jury believed the testimony of defendant, the recovery would be *quantum meruit*. In this aspect of the case the defendant offered competent testimony of the customary commissions in procuring sales of wood. The testimony was rejected. It should have been admitted, to enable the jury to determine the amount of the recovery in case they found there was no express agreement as to commissions.

Other errors are assigned and have been argued by the respective counsel. It is not deemed necessary to consider them.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.