McKenzie, Respondent, vs. Lego and another, Appellants.

*January 12 — February 8, 1898.*

*Agency: Brokers: Sale of logs: Right to commission: Lumber inspectors:*
*Evidence.*

1. In an action against the vendors of logs to recover a commission for effecting the sale thereof, there was evidence tending to show, among other things, that February 20th the purchaser wrote the plaintiff inquiring for logs; that in February or early in March the defendants agreed to pay the plaintiff for finding a purchaser for the logs whatever the same should bring over and above a certain price; that March 5th the plaintiff informed said purchaser that defendants' logs could be had at the price subsequently paid for them, and recommended their purchase; and that the purchaser thereupon called upon the defendants and made the purchase. There was no evidence that the purchaser ever paid, or offered or promised to pay, to the plaintiff anything for securing such purchase. *Held*, that a finding that the plaintiff was the agent of the defendants, and not of the purchaser, was sustained by the evidence.

2. A provision in the contract for the purchase of the logs that the plaintiff should review and inspect the scale made by the defendants when the logs were banked, would not affect his right to recover commissions earned under the contract with the defendants, his services under the former contract being independent of those performed under the latter.

3. An agent employed to procure a purchaser for logs at a fixed price, without authority to make or close a contract for the sale thereof, becomes entitled to his commission when he produces a responsible purchaser ready and willing to purchase them at the price agreed upon.

4. The mere fact that a person was the lumber inspector in one district did not preclude him from making a contract by which he was to receive a commission for procuring a purchaser for logs situated miles away in another district.

Appeal from a judgment of the circuit court for Chippewa county: A. J. Vinje, Circuit Judge. *Affirmed.*

The facts are stated in the opinion.

McKenzie vs. Lego and another.

For the appellants there was a brief by *L. J. Rusk* and *Wickham & Farr*, and oral argument by *F. R. Farr* and *Mr. Rusk.* They contended, *inter alia,* that the policy of the law forbids that a person acting as the friend and con-. fidential adviser of a purchaser should at the same time be secretly receiving a compensation from the seller for effecting the sale, and a contract for such compensation is void. *Bollman v. Loomis,* 41 Conn. 581; *Holcomb v. Weaver,* 136 Mass. 265; *Atlee v. Fink,* 75 Mo. 100, 42 Am. Rep. 385, note; *Thomas v. Caulkett,* 57 Mich. 392, 58 Am. Rep. 369; *Oscanyan v. Arms Co.* 103 U. S. 261; Greenhood, Public Policy, 292, Rule 261, and cases cited; Mechem, Agency, § 20.

For the respondent the cause was submitted on the brief of *Connor & Leonard.*

CASSODAY, C. J.   This action was commenced in March, 1892, to recover an agreed commission and compensation for finding a purchaser of certain pine saw logs belonging to the defendants as copartners.   Issue being joined, jury waived, and trial had, the court found, as matters of fact, in effect, that March 15, 1888, and for some time prior thereto, the defendants, as copartners, were the owners of 4,200,000 feet of saw logs, which they were desirous of selling; that in February, or early in March, 1888, the defendants promised and agreed to give or pay to the plaintiff, as commission for finding a purchaser for said logs, whatever the same should be sold for over and above $7 per thousand feet; that in pursuance of such agreement the plaintiff found and procured a purchaser for said logs in the person of one W. R. Anthony, and March 15, 1888, said Anthony purchased for the firm of W. R. Anthony & Co., of which he was a member, the said logs, at $7.25 per thousand feet; that in procuring such purchaser and making such sale the plaintiff was, and acted as, the agent of the defendants, and not as the agent of said Anthony or Anthony & Co.   And

as a conclusion of law the court found, in effect, that the defendants were indebted to the plaintiff in the sum of $1,050, with interest thereon from March 15, 1888; and judgment was entered thereon accordingly. From the judgment so entered the defendants bring this appeal.

It is undisputed that during the time mentioned the plaintiff lived near the Mississippi river, at Alma, in Buffalo county, and was engaged in the business of buying and selling logs and timber, and in negotiating the sale and purchase of logs and timber as a broker on commission; that during the same time the defendants were copartners, residing at Chippewa Falls, and owned the logs and the timber from which the logs were to be cut, all situate and being in Chippewa county; that previously the defendant *Grandmaitre* had assigned to the defendant *Lego* his interest in said timber and logs to secure him for moneys advanced in the enterprise; that one John King was a silent partner of the defendants in the business; that W. R. Anthony, mentioned, resided at Comanche, Clinton county, Iowa, and was a member of the firm of W. R. Anthony & Co.; that the plaintiff, by correspondence and otherwise, induced W. R. Anthony to go to Chippewa Falls, March 15, 1888, and while there to enter into a written contract in the name of his firm with the defendant *Lego* personally, wherein and whereby *Lego* agreed to cut, haul, and deliver to W. R. Anthony & Co., on Main creek, in Chippewa county, and some thirty or forty miles northeast of Chippewa Falls, the logs in question which had then been partly cut, and the balance were to be cut from timber on the lands therein described; that *Lego* therein further agreed to bark- and end-mark each log, as therein prescribed, and to have such mark recorded immediately in the lumber inspector's office at Chippewa Falls; that *Lego* therein further agreed to cause all such logs to be scaled as fast as banked, by a competent scaler, and upon the breaking up of logging operations to render to W. R. Anthony

& Co. a statement in writing, certified to by such scaler, showing the whole number of logs, and the number of feet therein, the number of logs of each length, and the average number of logs per thousand feet, up to the date of such statement; that it was thereby mutually agreed and understood by the parties thereto that the scale of the logs made by such scaler should be reviewed and inspected by the plaintiff, who should have power to decide upon the accuracy of such scale, and in so doing might add to or deduct from such scale such amount as, in his judgment, should seem just, and his decision on such scale, when made, should be final, and binding on the parties, and constitute and be the scale of the logs upon which the payments therein mentioned should be made; that the title to the logs should vest in W. R. Anthony & Co. as fast as delivered in Main creek; that, in consideration thereof, W. R. Anthony & Co. therein agreed to pay said *Lego* $7.25 per thousand feet, as therein prescribed; and that the logs were, in fact, cut and delivered as so agreed. It is admitted in the case on the part of the defendants that such logs were sold to W. R. Anthony & Co. for $7.25 per thousand feet by *Lego* and not by the plaintiff.

1. Error is assigned because the court found that the plaintiff was not the agent of W. R. Anthony & Co. It appears that in November or December, 1887, one or more of the firm of W. R. Anthony & Co. was at Chippewa Falls, and learned about the logs, and had some talk with *Lego* about them; that it resulted in several letters passing between *Lego* and the firm, which finally terminated in that December or January following without reaching any agreement. February 20, 1888, Anthony & Co. wrote to plaintiff: "If you hear of any good logs for sale on bank, please examine them, if price is not too high, and report to us at once, so we can close deal if satisfactory." March 5, 1888, the plaintiff wrote to W. R. Anthony & Co.: "I think I can get

King's logs for seven and a quarter. I think there is something in them for you. There will be about four million, and you must consider that they will get to the slough in good season next spring. They will be sold at that price if you do not want them. I have the refusal this week only. Answer by return mail." "King's logs," mentioned in the letter, meant the logs in question, as he was a silent partner of the defendants in respect to them; and the contract for the logs was executed ten days afterwards. It appears that subsequently to the sale of the logs, and prior to the trial of this action, the defendants and their silent partner, King, got into litigation; and the testimony of the defendant *Lego* is more or less in conflict with the testimony of the others, as well as the plaintiff. The defendant *Lego* flatly denies ever having made or authorized or consented to the making of any contract or agreement with the plaintiff for finding a purchaser of the logs; but upon the whole record we think the finding of the court to the effect that the defendants promised and agreed to pay to the plaintiff, as commission, for finding a purchaser for the logs, whatever the same should be sold for over and above $7 per thousand is sustained by the evidence, and that the plaintiff did find and procure such purchaser at $7.25 per thousand feet, and that in doing so the plaintiff acted as the agent of the defendants, and not as the agent of W. R. Anthony or Anthony & Co. There is no evidence that W. R. Anthony or Anthony & Co. ever paid, or offered or promised to pay, to the plaintiff anything to secure such purchase.

2. The question recurs whether the plaintiff is entitled to the commission of twenty-five cents per thousand feet upon the facts so found. The law is, undoubtedly, as claimed by counsel for the defendants, that " one who acts as the vendor's agent in the sale of property without the knowledge of the vendee, cannot recover from the vendee for services in effecting such sale as his agent; his concealment of the

fact that he was agent for the vendor being a fraud in the law." *Meyer v. Hanchett,* 39 Wis. 419. The converse of the proposition is equally true, for it is well established that " one cannot act as agent for both seller and purchaser, unless both know of and assent to his undertaking such agency and receiving commissions from both." *Meyer v. Hanchett,* 43 Wis. 246. In the case at bar the plaintiff was not employed by the defendants to make a sale of the logs, but merely to find some one who was willing to purchase at $7 per thousand or upwards, leaving the parties to make their own contract.

Thus, in *Herman v. Martineau,* 1 Wis. 151, the defendant, who owned a farm, agreed to pay to the plaintiff $10 if he found him a tenant to whom he could let his farm, and another person, who desired to rent a farm, agreed to pay to the plaintiff $5 if he would find him a farm which he might rent. The plaintiff thereupon brought the would-be tenant and the owner of the farm together, and they thereupon consummated a contract for the letting of the farm; and it was held, in effect, that the plaintiff was not the agent of the former for letting the farm, and that the fact that the tenant had agreed to pay him for finding the farm to rent was no objection to his recovery of the $10 from the farmer for thus finding a tenant. This was put on the ground, as stated by the court, that: "There was no opportunity here for the violation of good faith on the part of Herman, and it was entirely consistent with his duty to Martineau that he could, at the same time and in the same transaction, perform a service, and thereby earn a compensation from a third party. The test in such cases is whether the interests of one of the parties for whom the person acts are antagonistic to those of the other party; for, if they be, he could not be said to act with a sole regard to the interests of his principal." *Id.* 157, 158. That case was expressly approved in *Stewart v. Mather,* 32 Wis. 355, and it is there stated by

McKenzie vs. Lego and another.

Dixon, C. J., to be "in strict harmony with the decisions," which he cites; and, among other things, he said: "Thus, in *Rupp v. Sampson*, 16 Gray, 398, it was held that if a middleman brings together a buyer and a seller, each of whom has agreed, without the knowledge of the other, to pay the middleman a commission on any contract which may be made between them, and a contract is made between them, in the making of which the middleman takes no part as agent for either, the conduct of the middleman in concealing from each his agreement with the other is not fraudulent, and is no defense to an action brought by him against either to recover the commission agreed upon." *Id.* 355. In that case this court held that, "where a sale is effected through the efforts of a broker, or through information derived from him, so that he may be said to have been the procuring cause, the law leans to that construction of his contract with the vendor which will secure the payment of his commission, rather than to the contrary construction." *Id.* 344.

So it was held by this court in a more recent case that "one who, in the sale or exchange of property, acts merely as a middleman to bring the parties together, they making their own contract, may recover compensation from both parties." *Orton v. Scofield*, 61 Wis. 382, and cases there cited. See, also, *Willes v. Smith*, 77 Wis. 81. In the still more recent case of *Donohue v. Padden*, 93 Wis. 20, it was held that "a real-estate broker is entitled to the agreed commission upon a sale of land where the owner fixed the price, received the full amount stipulated for in his contract with the broker, and was to receive no more in any event, although, before his employment, the broker had shown the land to the purchaser and the latter had expressed a desire to meet the owner, and although the broker had rendered some services to such purchaser."

The plaintiff was a middleman, and nothing more. There is no evidence that he had any authority to make or close

a contract for the sale of logs on the part of the defendants, much less on the part of Anthony or Anthony & Co. His only engagement was to find and procure a purchaser, as he did. That engagement was fully performed when he procured W. R. Anthony to visit the defendants at Chippewa Falls, and express to the defendants a willingness to purchase the logs at the price named; especially as no objection was made to him for want of responsibility or otherwise. Both Anthony and his firm appear to have been wholly unobjectionable. When such purchaser was so procured, the plaintiff, under his agreement with the defendants, had fully earned his commissions, and was then entitled to his compensation. Such right to compensation could not then have been defeated, even had the defendants refused to close the contract. *Stewart v. Mather*, 32 Wis. 355; *Willes v. Smith*, 77 Wis. 81.

3. This being so, it is really immaterial as to what the plaintiff subsequently agreed to do in respect to the logs. The question here presented is not whether the plaintiff could have collected pay of Anthony or Anthony & Co. for reviewing and inspecting the scale made on the part of the defendants when the logs were banked, as "mutually agreed and understood" by the express terms of the contract, but whether he can recover for services upon an agreement fully performed at the time when the contract with Anthony & Co. was signed. His services for reviewing and inspecting the scale were independent of his former services, and for them he was to be paid, and was, in fact, paid. The answer is a mere general denial, and the character of the stipulation in that contract in regard to so reviewing and inspecting the scale when the logs were banked was not involved in the issue on trial nor the issue tried.

4. So the mere fact that the plaintiff was lumber inspector of the Ninth district, at Beef Slough, in Buffalo county, did not preclude him from entering into a contract to procure

a purchaser of logs situated in Chippewa county, and in another district, and many miles away from Beef Slough.

*By the Court.*— The judgment of the circuit court is affirmed.