MURRAY, Respondent, vs. HAMILTON BEACH MANUFAC-
TURING COMPANY, Appellant.

*October 13—November 8, 1922.*

*Master and servant: Commissions to salesman: When due: Method
of payment: Modification of contract of salesman: Con-
sideration: Customers to whom salesman might sell: Designa-
tion by employer: Default of employer: Liability for com-
missions.*

1. Where a contract stipulating for a commission on all customers' orders sent in by a traveling salesman was silent as to the time of payment, he was entitled to his commissions on demand for payment after written orders procured by him were received by the employer from the customers.

2. A wholly executory contract of sale may be modified without a new consideration, the consideration of the original contract being sufficient; but where the contract is completed or executed by one party, any modification thereof must be supported by a new consideration.

3. Where the salesman wrote a letter to his employer stating that a check for commissions on certain orders was too small, to which it replied that on all machines delivered and paid for during any current month he would not receive his commissions until the end of the month, to which he replied by a letter stating the amount of his commissions on orders procured and that he expected the amount would be sent in monthly instalments as the machines were shipped and paid for, the correspondence could not be construed to mean that the contract provided for payment of commissions when the machines were actually shipped and paid for, but that it merely referred to a method of payment.

4. Nor does the correspondence between the parties show that the salesman was to confine his sales to one jobber in a

certain territory, the matter being left to his discretion, so as to entitle him to commissions on an order from another jobber accepted by the employer, though the employer failed to bind the jobber by failing to make delivery within a reasonable time.

5. Where the default of the principal is due to his failure to carry out the contract and not to any act or omission of the agent, the agent is entitled to compensation.

APPEAL from a judgment of the circuit court for Racine county: WILBUR E. HURLBUT, Judge. *Affirmed.*

This is an appeal by the defendant from a judgment entered on the 29th day of May, 1922, in favor of the plaintiff in the sum of $3,155 damages, together with costs. The facts are set forth in the opinion.

For the appellant there was a brief by *Simmons & Walker* of Racine, and oral argument by *Mortimer E. Walker.*

For the respondent there was a brief by *Whaley & Erikson* of Racine, and oral argument by *C. A. Erikson.*

DOERFLER, J. The defendant, prior to the month of February, 1920, was engaged in the manufacture of various electrical and other specialties, and the plaintiff was employed by it as a traveling salesman. In the year 1920 the defendant, who was manufacturing a certain carpet-washer machine, planned an advertising campaign and mapped out a program for the sale of this machine. The salesmen of the company, including the plaintiff, were called into the office and the merits of the machine were carefully explained to them, and at the close of such conference one F. Riebel, Jr., the sales manager for the company, made the following oral offer to the plaintiff, to wit: "Well, now, *Murray,* I have got something I want to tell you. We will pay you $5 on every one of these machines you sell. I want you to go out and get busy and I hope you make a lot of money."

On the witness stand Mr. Riebel testified with reference to this offer to the plaintiff as follows:

"I said upon authority of Mr. Osius [Mr. Osius being one of the officers and the principal stockholder in the defendant] to these fellows, to the best of my recollection, that we were going out with a new product different than the *Hamilton Beach Manufacturing Company* previously had ever sold, and that we were anxious for them to be with us, so to speak, on our plan, ordinary sales campaign, and that appreciating that they could probably be with us in heart and soul a little bit more, Mr. Osius wanted me to say to them that we would, on all customers' orders sent in by them calling for carpet washers, hand them a bonus, a good-will bonus of five dollars a machine under the conditions stated. They knew nothing about it before; said nothing about it afterwards; it was accepted at the time it was spoken of just exactly as it was offered."

This oral agreement was accepted by the plaintiff, and he thereafter traveled through the states of Ohio, Michigan, Kentucky, and Indiana, and obtained in writing orders from defendant's regular customers in the jobbing line for 650 machines. One written order for twelve machines was obtained by the plaintiff from the Great Lakes Electric Company of Cleveland, Ohio, which company had not transacted business with the defendant previously, and such order was promptly refused by the defendant, and the commissions on this order are not included in plaintiff's claim. All of these orders were obtained by the plaintiff between the latter part of February, 1920, and the latter part of August of the same year, and all but orders for twenty-seven of these machines were taken between the latter part of February and the first day of May in said year. The plaintiff conceded that he had received from the defendant the sum of $95 in part payment of the commissions earned, and it is also conceded that the defendant actually delivered 382 of the machines for which plaintiff received orders, and that it received its pay for such machines.

Murray v. Hamilton Beach Mfg. Co. 178 Wis. 624.

At the close of the testimony plaintiff's counsel moved for a directed verdict in his client's favor for the sum of $3,195 with interest from the 31st day of August, 1920, which motion was overruled by the court without prejudice. While the action was submitted to the jury upon questions for a special verdict, it will be unnecessary to consider any of the errors assigned by defendant's counsel applicable to what transpired after the ruling of the court on the motion to direct a verdict, if we conclude that the court erred in denying plaintiff's motion for a directed verdict. We will therefore direct our attention first to the question of whether such motion for a directed verdict should have been granted.

On its face the oral contract above referred to was plain and unambiguous. The testimony of the sales manager of the defendant, Mr. Riebel, is so direct and definite as to leave no room for construction. The contract referred to applied solely to the business relations of the plaintiff and the defendant, and embraced written orders procured by the plaintiff from defendant's customers, and unless the terms of this contract were subsequently modified the plaintiff was entitled to his commissions upon demand for payment after the written orders procured by him were received by the defendant from the customers. *Cliver v. Heil,* 95 Wis. 364, 70 N. W. 346. Nothing was said as to the manner or time of payment of the commission until some time in the month of July, at which time all of the written orders had been procured by the plaintiff with the possible exception of orders for twenty-seven machines. Prior to February, 1920, it was the custom of the defendant to promptly acknowledge receipt of orders and to immediately accept or reject the same. After February, 1920, with respect to orders for this carpet-washer machine, the company installed a new method, and failed in all instances to send a written acknowledgment and acceptance of the orders procured.

It also appears from the evidence that the defendant was not properly equipped so as to enable prompt deliveries, and that the inability of the company in that respect was made known to the plaintiff. There is no competent evidence in the case showing that any of the orders procured by the plaintiff were refused by the defendant or canceled by it with the exception of the order for twelve machines by the Great Lakes Electric Company of Cleveland, Ohio, and the only other order that was canceled was the one for fifty-two machines, which order was canceled by the Avery-Loeb Company.

A wholly executory contract of sale may be modified without a new consideration, the consideration of the original contract being deemed sufficient. *Kelly v. Bliss,* 54 Wis. 187, 11 N. W. 488; *Peters & Reed P. Co. v. Folckomer,* 131 Mo. App. 105, 110 S. W. 598; 35 Cyc. 124. If, however, the contract is complete or executed by one party, any modification thereof must be supported by a new consideration. 35 Cyc. 124, and cases cited in note 38.

It now appears conclusively from the evidence in this case that all of the orders included in this action, with the exception of orders for twenty-seven machines, were procured by the plaintiff between the latter part of February, 1920, and the 1st day of May, 1920. To this extent the contract was fully executed on plaintiff's part, and no consideration was named or fixed as a basis for a modification.

It is true that the plaintiff, from February until July, made no demand for commissions, notwithstanding the fact that he had on a number of occasions during that time held conferences with members of the defendant organization at the city of Racine. This fact alone, however, cannot alter the terms of the contract entered into between the parties.

It is contended by the defendant that it was contemplated by the contract that no orders were to be solicited by the plaintiff excepting from regular customers of the de-

fendant. With the exceptions heretofore referred to, all of
the orders were from jobbers who were recognized cus-
tomers of the defendant and who were responsible from a
financial viewpoint.

On July 20, 1920, the plaintiff wrote the defendant a
letter, of which the following is an excerpt:

"Not knowing the exact method you intend to pursue in
paying commissions, I hope you will pardon my calling
your attention to the fact that the Erner Company have
received and paid for four machines, and the Republic
Electric Company have received an equal amount and paid
for them. The Worthington Company have received two
and have paid for one, whereas your check gives me credit
on only two each to Erner and Republic, and one each to
Commercial of Detroit and Iron City of Pittsburgh."

To this letter the defendant replied as follows:

"On all machines delivered and paid for during any
current month you will naturally not receive your commis-
sion until the end of the month. This will explain to you
exactly how our commission payments will be made, al-
though I shall be glad to answer any further questions on
this subject as they come up."

Following this letter the plaintiff wrote to the defendant
a letter of date of September 7, 1920, containing among
other things the following:

"Outside of orders taken at the Cleveland Show, which
I understand from your letter of July 30 will also be
credited to me, my records show that I have sent you orders
for 635 carpet washers on which the commission will
amount to $3,175. I take it that this amount will be sent
to me in monthly instalments as the machines are shipped
and paid for."

On the part of the defendant it is claimed that this corre-
spondence shows that the agreement between the parties
provided that the commissions were not to be paid to the
plaintiff until the machines ordered were actually delivered
and paid for. In any event, however, this correspondence,

if applicable at all, can only apply to the orders for twenty-seven machines which were procured after May 1st. It does not even appear from the evidence that these orders were procured after the correspondence referred to was started. But assuming such to be the case, a careful reading of the correspondence will convince one that the same does not imply, and that it cannot be construed to mean, that the contract between the parties was such as to provide for payment of commissions when the machines were actually shipped and paid for, but that it merely referred to a method of payment. Plaintiff had no control over the defendant with respect to acknowledgments or acceptances. While it may be true that the defendant in no instance was obligated to carry out the orders which had not been acknowledged and accepted, nevertheless it could not deny plaintiff's right to commissions at least on orders which the defendant had not refused and which it had not canceled. Otherwise defendant might have received the benefit of a long, conscientious, and protracted service on the part of the plaintiff, and by refusing acceptance and delivery could have deprived plaintiff of the consideration of his contract.

We now come to the consideration of the Avery-Loeb order, which the evidence shows was canceled on July 13, 1920. The order for these machines was procured on the 15th day of April, 1920. Defendant claims that it had given plaintiff express instructions not to sell to the Avery-Loeb Electric Company, but to confine his sales in that territory to the Erner-Hopkins Company. The defendant's contention in this behalf is not borne out by the evidence. Previous to obtaining this order the defendant wrote the plaintiff a letter, of which the following is an excerpt:

"We will, of course, extend jobber's prices to Erner-Hopkins and also to Avery-Loeb Electric Company. However, in considering this matter, if one of these jobbers should feel more encouraged than the other, and was willing to place a considerable stock order and could show to your

satisfaction that they were going to actively promote the sale of the carpet washer, I would suggest that we do not put any pressure on the other jobber. In other words, there are going to be a great many jobbers which are on the old list of jobbers of the *Hamilton Beach Manufacturing Company* that we will be just as well satisfied without, providing we can obtain adequate representation from the other and more active jobbers on the list."

On April 27th Riebel, the sales manager of the defendant, wrote the plaintiff as follows:

"I was just reading over your letter again of the 13th inst., written at Dayton, wherein you want me to write to Erner-Hopkins and Avery-Loeb concerning deliveries. I think that you can do this better than I can, although I have written them in connection with their orders in a routine way. Here is the situation: We have on file, for which we have received cash direct from users who are starting in the carpet-cleaning business, enough orders to absorb our entire production until about the 20th or 25th of May, possibly the first of June. Of course I recognize the necessity of setting some of these sales aside and shipping a few machines to jobbers. However, we are not going to be able to deliver quantities to jobbers until about June 1. I should say that during the month of May Avery-Loeb and Erner-Hopkins ought to receive a total of three or four machines each."

The above correspondence clearly shows that while it was suggested by the defendant that the sales in the territory of the Avery-Loeb Company be confined to the Erner-Hopkins Company, nevertheless the entire matter was left to the discretion of the plaintiff, and the extract from the letter last above referred to clearly indicates that the order of the Avery-Loeb Company procured by the plaintiff was accepted by the defendant, at least as far as plaintiff's right to commission is concerned. Under these circumstances the defendant was clearly liable for the commissions on these fifty-two machines. Further, inasmuch as the defendant received the order of the Avery-Loeb Company

on April 15, 1920, and held this order in abeyance on its books until July 13, 1920, the date of the cancellation, the failure to bind the Avery-Loeb Company was not due to any act on the part of the plaintiff, but was solely due to the failure of the defendant to properly acknowledge and accept the order of the Avery-Loeb Company and its failure to make delivery within a reasonable time.

If the default of .the' principal is due to his failure to carry out the contract and is not due to any act or omission on the part of the agent, the agent is entitled to his compensation. *Fisher v. Drewett,* 48 L. J. Exch. 32; *Shinn v. Haines,* 21 N. J. Law, 340; *Stone v. Argersinger,* 32 App. Div. 208, 53 N. Y. Supp. 63; *Abel v. Nelson,* 104 N. Y. Supp. 362; *Lafferty v. Lorimer,* 86 Mich. 591, 49 N. W. 586; 32 Cyc. 1510.

From the foregoing we conclude that plaintiff's motion for a directed verdict should have been granted, and that the plaintiff is entitled to all of the commissions sued for, and that the judgment of the circuit court must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.