ZWECK, Respondent, v. D P WAY CORPORATION,
Appellant.

*No. 55 (1974). Submitted under sec. (Rule) 251.54 October 2,
1975.—Decided November 10, 1975.*
(Also reported in 234 N. W. 2d 921.)

For the appellant the cause was submitted on the briefs of *Wimmer, Evans & Vollmar* of Waukesha.

For the respondent the cause was submitted on the brief of *Weiss, Steuer, Berzowski & Kriger,* attorneys, and *Robert K. Steuer* and *John P. Brady* of counsel, all of Milwaukee.

WILKIE, C. J. This is an appeal in an action based upon a sales commission agreement between the plaintiff, David Zweck, and the defendant, D P Way Corporation. The defendant has appealed a judgment for the plaintiff in the sum of $3,751.90, and plaintiff seeks an increase in that judgment of $1,650. We affirm the judgment of the trial court.

Plaintiff and defendant entered into a representation agreement on October 21, 1970. According to the terms of the agreement plaintiff was to act as the selling agent for the defendant on a commission basis in a specified region of the country. Defendant was in the business of marketing truck-mounted industrial vacuum loaders. Articles V and VI of the agreement provided as follows:

"Company shall pay Representative Fifteen (15%) Percent of the gross selling price on Model 350 ULTRA-VAC and Fifteen (15%) Percent of the gross selling price on all parts and accessories therefor, after receipt of payment from the purchaser.

"Company shall pay Representative Thirteen point eight seven five (13.875%) Percent of the gross selling price on Model 800 ULTRAVAC and Thirteen point eight seven five (13.875%) of the gross selling price on all parts and accessories therefor, after receipt of payment from the purchaser."

Article XI provided that Zweck was to be responsible "for all sales and services" within his geographical area. Article XV stated:

"Representative and/or Company shall be free to terminate this agreement at will.

"However, upon said termination, Company shall continue to pay said Representative all commissions resulting from all sales made by said Representative during the period of this agreement."

The relationship between Zweck and D P Way continued smoothly for some time, with Zweck selling the machines and receiving his commissions. However, on January 16, 1973, Zweck exercised his right to terminate the agreement, apparently in order to join with others in a newly formed competitor company.

It is undisputed that Zweck obtained three orders for machines on which he had not collected his commissions when he terminated the agreement. These orders were from the Anaconda Company, Kennecott Copper Corporation, and FMC Corporation. The orders were accepted by D P Way, but delivery was not made until after January 16, 1973. Prior to termination, Zweck had also obtained a United States Navy lease for a machine for eighteen months.

Zweck brought suit to recover these commissions and other damages. D P Way paid Zweck his commissions on the three orders and the Navy lease. However, the company deducted from the regular percentage commissions a total of $2,672.80. This sum represented D P Way's accounting of expenses which it had incurred in starting up and servicing the machines which Zweck had sold or leased. It included labor costs, air fare, car rental, and out-of-pocket expenses. D P Way took the position that it was entitled to make these deductions because Zweck had failed to meet his start-up and service obligations in regard to the three orders and the Navy lease. After Zweck served an amended complaint which recognized these partial payments and made demand for the full commissions, trial was held to the court with the result that the court entered findings of

fact and conclusions of law in which it concluded that Zweck was entitled to his regular commissions without deductions. It also determined that the Navy lease was terminated in May, 1973, thus cutting off Zweck's monthly commission at that point.

The first controversy involved in this appeal is whether plaintiff is entitled to full commissions without deductions on the three sales that were procured before the termination of Zweck's sales agent agreement, but which did not result in payment of the sales price until after the termination date. Defendant argues that plaintiff is not so entitled because (1) he had not earned the commissions before he terminated the agreement, and (2) if he had earned commissions, these commissions were subject to a deduction for recoupment by defendant for certain services not performed by plaintiff which defendant had to undertake although plaintiff had agreed to perform them as a condition precedent to receiving the commissions. We disagree.

There is no question that the commissions were earned prior to termination of the sales agent agreement. True, deliveries were not made nor payments received until after the termination date. However, Zweck earned his commissions when he procured a ready, willing, and able buyer who had filled out a purchase order for the machines which was received by the company. It is undisputed that these events occurred prior to termination of the contract, and so, according to Article XV, Zweck was entitled to his full commission on these sales. Articles V and VI of the contract do not alter this result because they do not establish the time when Zweck became entitled to his commissions. They merely fix the time of payment of the commissions as "after receipt of payment from the purchaser."

This holding is in accord with a long line of cases in which this court has adhered to the general rule that a selling agent earns his commission when he procures

an order from a ready, willing, and able purchaser, and this order is received by the company.[1]

On the question presented of whether the defendant could charge as deductions against the commissions earned by the plaintiff those expenses incurred to cover services rendered after the agreement was terminated, the trial court here took testimony to determine whether an ambiguity existed in the language of the contract. The contract specifically provided that the plaintiff was to be "responsible for all sales and services." The contract did not detail what was meant by "services" and thus the trial court followed the procedure approved in *Hanz Trucking, Inc. v. Harris Brothers Co.*,[2] and heard relevant parol testimony on that ambiguity.[3]

Presley, a similarly situated selling agent, testified that his duties were to be present at the installation of the machines and to instruct the customer's personnel in the proper operation and maintenance of the machine. Kamber, also a salesman like Zweck, agreed that set-up and instruction were his service duties. Moore, former sales manager and superior to Zweck, but now his colleague in the newly formed competitor company, offered conflicting testimony about the duties of selling agents. On the one hand, he stated that start-up and instruction were strictly voluntary options on the part of salesmen, which they might undertake in order to solidify their contacts and enhance their good will. On the other hand, he admitted that he had previously under oath

[1] *Braun v. Consolidated Electric Lamp Co.* (1944), 245 Wis. 170, 13 N. W. 2d 549; *Walter v. Four Wheel Drive Auto Co.* (1934), 213 Wis. 559, 252 N. W. 346; *Murray v. Hamilton Beach Mfg. Co.* (1922), 178 Wis. 624, 190 N. W. 460; *McKenzie v. Lego* (1898), 98 Wis. 364, 74 N. W. 249; *Kelly v. Phelps* (1883), 57 Wis. 425, 15 N. W. 385.

[2] (1965), 29 Wis. 2d 254, 260, 261, 138 N. W. 2d 238.

[3] This is also the proceeding recommended by Corbin; 3 Corbin, *Contracts*, pp. 100–155, p. 249, secs. 542, 542A, 543, 558 (1960).

described these activities as duties. Zweck himself declined to characterize these activities as duties, and stated only that he undertook to provide the best service for his customers. An exhibit was introduced which showed that Moore had once informed Presley that he would have to bear the expense if another individual performed service activities for him. Another exhibit indicated that Zweck had described himself as a factory service technician in a letter to a purchaser. Still another document showed that it was company policy that salesmen were not to provide factory service unless they had received permission to do so from the general sales manager.

None of this evidence affects the very evident meaning of the written contract between Zweck and D P Way. Articles V and VI do not in any way make the rendering of services a condition precedent to receiving a commission. They state only that Zweck will receive a specified commission upon sale of certain machines, and fix the time for payment of the commission as the time when payment is received from the purchaser. Similarly, Article XI states only that Zweck "shall be responsible for all sales and services within said geographical area . . . ." It does not make the rendering of such services a condition precedent to receiving commissions. Thus, no matter what Zweck's service obligations were under the contract, they were not a necessary prerequisite to reception of a commission.

Defendant cites *Merriman v. McCormick Harvesting Machine Co.*[4] in support of his contention that performance of services by Zweck was a necessary prerequisite to earning the commissions. In *Merriman* the court held that selling agents for a company were not entitled to full commissions for sale of farm machinery because they had not first fulfilled their service obligations.

[4] (1897), 96 Wis. 600, 71 N. W. 1050.

However, in *Merriman* the contract specified with great particularity a number of services to be performed by the agents, and provided that performance of these services was a condition precedent to earning the commissions:

". . .The contract provides for a certain commission upon the sale of each machine, which is to be earned, not by obtaining the order alone, but by receiving and housing the machine, setting it up and running it, instructing the purchaser, receiving and transmitting the money or notes therefor, and by rendering other services connected with the sale. Manifestly the contract is entire as to each commission, and is not earned except by the performance of all the requirements."[5]

*Merriman* is thus inapposite to the facts of the instant case, where the contract only provides in general terms that Zweck is responsible for "services," and nowhere makes the provision of such services a condition precedent to receiving his commissions.

Defendant contends that, even assuming that service duties were separate obligations, they were still obligations the breach of which caused damages to the defendant which he could recoup by reducing the plaintiff's recovery in the present action. Plaintiff argues that defendant is precluded from seeking such a reduction because these damages constitute a setoff which, according to sec. 895.13, Stats., must be pleaded in the form of a counterclaim, and not an affirmative defense, as defendant pled the matter. However, plaintiff fails to distinguish between a setoff and a recoupment. A setoff is a demand which the defendant has against the plaintiff, arising out of a transaction *extrinsic* to the plaintiff's cause of action. Since it is purely statutory in origin, all of the statutory requirements must be strictly complied with. A recoupment, on the other hand,

---

[5] *Id.* at page 606.

is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the *same* transaction. Since it is of common-law origin and is distinct from setoff, the statutory requirements regarding setoff do not apply, and recoupment may be pled defensively, as it was in this case.[6]

Nevertheless, defendant's claim of recoupment cannot be upheld on the merits. Zweck breached no contractual obligation by failing to perform services after he had terminated the agreement. Article XI clearly provides that Zweck had the right to terminate the contract, and all of its binding obligations, at will. The only obligation which survives termination, according to Article XI, is the company's obligation to transmit to Zweck commissions on sales made prior to termination. It is thus immaterial which obligations Zweck had during the life of the contract, for, once the contract was terminated, these obligations ceased.

Defendant argues that this result is unfair, and could not possibly have been the intention of the parties. It is axiomatic, however, that this court does not reform contracts to fit its own or someone else's view of what the most equitable division of rights and duties would have been. The role of this court is to construe and interpret contracts as they have been set down in writing by the parties. As was said long ago in *Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin,*[7] "the office of judicial

---

[6] *See generally:* 80 C. J. S., *Set-Off and Counterclaim,* pp. 5–9, secs. 2, 3; 20 Am. Jur. 2d, *Counterclaim, Recoupment, and Setoff,* pp. 228, 229, secs. 1, 2. For Wisconsin cases recognizing recoupment as a separate remedy, *see: Peterson v. Feyereisen* (1931), 203 Wis. 294, 234 N. W. 496; *Hildebrand v. American Fine Art Co.* (1901), 109 Wis. 171, 179, 85 N. W. 268; *DeWitt v. Cullings* (1873), 32 Wis. 298; *Norton v. Rooker* (1842), 1 Wis. (Pin.) 195, 209.

[7] (1897), 95 Wis. 111, 115, 69 N. W. 354.

construction is not to make contracts or to reform them, but to determine what the parties contracted to do."

With respect to the Navy lease, the defendant argues that the commission was not due on the lease since it was not a sale. True, Articles V and VI provide for commissions on "gross selling price" and Article XV states that the defendant is entitled to all commissions on all "sales" during the period of the agreement. But there was abundant evidence here in the record to show that D P Way itself had interpreted the contract to include commissions based on long-term leases as well as sales. In fact, it had paid Zweck two monthly installments of his commission on the Navy lease.

The trial court rightfully relied upon this evidence of course of performance or practical construction in deciding that the parties contemplated commissions on long-term leases. It is a well-settled principle of Wisconsin law that, where contract terms may be taken in two senses, evidence of practical construction by the parties is highly probative of the intended meaning of those terms and the court will normally adopt that interpretation of the contract which the parties themselves have adopted.[8] In addition to this evidence, the trial court also concluded that the concept of sale should, in this case, be viewed in an accounting sense, which would cover all moneys received in exchange for any property, howsoever conveyed, rather than in the narrow legal sense of a conveyance of title to property. This interpretation is perfectly justifiable, especially in light of the expanding use of the long-term lease as a vehicle for transfer of capital equipment. Although the interpretation of a contract poses only a question of law, so

---

[8] *Northwest Sand & Gravel Co. v. Schlieper* (1962), 17 Wis. 2d 639, 643, 117 N. W. 2d 588; *Cutler-Hammer, Inc. v. Industrial Comm.* (1961), 13 Wis. 2d 618, 632, 109 N. W. 2d 468; *Halvorson v. Tarnow* (1950), 258 Wis. 11, 16, 44 N. W. 2d 577.

that this court may interpret the contract anew,[9] in this case the independent interpretation of this court is in accord with that of the trial court.

The remaining issue in this case is whether and when the Navy lease was terminated. The evidence on this point is sketchy. Neither party introduced the lease itself into evidence. Paulson, the company president, admitted that Zweck had secured an eighteen-month lease from the Navy prior to his termination of the contract. Wartinbee, the company treasurer, testified that the monthly rental on this lease was $1,000, and that Zweck had been paid his 15 percent commission for the first two months of the lease, November and December, 1973. Wartinbee also testified that D P Way received $6,000 under the original lease before a new agreement was entered into between D P Way and the Navy. Johnstone, the general sales manager, testified that the lease specifically provided that no substitutes were to be made for the leased machine, and that the Navy had the option of cancelling the lease at any time. During November and December of 1973, according to the testimony of Wartinbee, the Navy began to have substantial trouble with the machine that had been leased. It is undisputed that the company sent workmen to work on the original machine in February of 1973. But this repair work apparently did not solve the problem, because, according to the testimony of Johnstone, the Navy cancelled the old lease in March, 1973. However, Johnstone had also testified that a new lease was entered into on January 5, 1973, a fact which seems unlikely in view of the repair work done on the original machine in February, 1973. In any event, a completely

[9] *Moran v. Shern* (1973), 60 Wis. 2d 39, 46, 208 N. W. 2d 348; *American Mut. Liability Ins. Co. v. Fisher* (1973), 58 Wis. 2d 299, 304, 206 N. W. 2d 152.

different model of vacuum loader was at some point substituted for the original machine.

The trial court found that the lease had been terminated by the Navy. This finding is not against the great weight and clear preponderance of the evidence. Wartinbee and Johnstone testified, in sum, that the Navy had the right to terminate the lease if it was unsatisfied with the performance of the machine, that it was unsatisfied, and that it exercised its right to terminate. However, in regard to the time of termination, the trial court found that the new model was installed in May of 1973, and that the old lease was terminated in May of 1973, so that Zweck was entitled to commissions up to and including the payment due for the month of May, 1973.

We find absolutely no evidence in the record which indicates that the new model was installed in May of 1973. Based upon Wartinbee's testimony that D P Way had received $6,000 or six monthly installments under the old lease, beginning on November 1, 1973, the trial court could have inferred that the old lease therefore ran through April of 1973. The trial court could have discounted Johnstone's contradictory testimony that the lease was terminated on January 5, 1973, and in March, 1973. However, if the lease was effective only through April of 1973, then Zweck was not entitled to the commission for May, 1973, as the trial court found. The judgment is therefore modified by reducing it in the amount of $150, plus interest.

*By the Court.*—The judgment is modified by reducing it in the amount of $150, plus interest, and, as modified, affirmed. Costs to respondent.