**LAKESIDE BRIDGE & STEEL CO., Plaintiff,**

v.

**MOUNTAIN STATE CONSTRUCTION CO., INC., Defendant.**

Civ. A. No. 73–C–649.

United States District Court, E. D. Wisconsin.

March 23, 1978.

Peter Karegeannes, Elwin Zarwell, Christopher Knight, Milwaukee, Wis., for plaintiff.

Ward Dunphy, Milwaukee, Wis., and Charles W. Yeager, Charleston, W. Va., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a diversity action arising out of a contract whereby plaintiff agreed to manufacture and supply to defendant certain structural assemblies for installation in the Gathright Dam and Reservoir in Gathright Lake, Virginia. Plaintiff is seeking $285,-938.10 as the principal amount owing under the contract, plus interest, and defendant has counterclaimed for $750,000 in damages for the alleged nonconformity to specifications of certain materials supplied by plaintiff to defendant for incorporation into the dam.

Earlier in this action the plaintiff moved for summary judgment on its complaint and for dismissal of the counterclaim, alleging that the claims made in defendant's counterclaim had been settled by a handwritten agreement entered into on August 23, 1973, by Gordon C. Behnke, the vice president of plaintiff, and Dean E. Lewis, the president of defendant. Defendant opposed the motion, alleging that the August 23 agreement was not intended by the parties as a complete settlement of defendant's claims. Plaintiff in turn asserted that parol evidence is not admissible to vary or contradict the terms of the written agreement.

The Court denied plaintiff's motion for summary judgment in a decision and order dated September 3, 1975, reasoning that since the defendant had denied, in its answer to the complaint, that plaintiff had duly performed under the contract, and plaintiff had submitted no affidavits to establish that it had, there was an issue of material fact in dispute.

The Court also denied plaintiff's motion to dismiss, reasoning in part that while parol evidence is not admissible to vary or contradict the terms of a writing "intended

by the parties as a final expression of their agreement" pursuant to § 402.202, Wis. Stats., it is admissible for the purpose of determining whether or not the agreement was intended as a final expression of the parties' agreement. See also *Danielson v. Bank of Scandinavia*, 201 Wis. 392, 230 N.W. 83 (1930), wherein three tests are set forth at 398–399, 230 N.W. at 85 for determining what parts of a transaction were reduced to writing and what parts were permitted by the parties to remain in parol:

" * * * (1st) whether a particular subject of negotiation is embodied in the writing depends wholly upon the intent of the parties thereto; (2d) this intent must be sought in the conduct and language of the parties and in the surrounding circumstances; (3d) in deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. 5 Wigmore, Evidence (2d ed.) § 2430."

In a decision and order dated September 22, 1977, the Court further ruled that it is a matter of law for the Court and not for the trier of fact to determine whether such agreement is intended as final. Accordingly, a hearing was held on October 31, 1977, at which the parties presented evidence of the circumstances surrounding their entering into the agreement. On the basis of that testimony and of the exhibits and other materials then submitted to the Court for consideration, the Court has now determined that the August 23, 1973, writing was intended by the parties as a final and complete expression of their agreement. Therefore, parol evidence will not be admitted to vary, contradict, or supplement the terms of the agreement.

In addition, based on the statement of uncontested and contested facts submitted to the Court by the parties on February 11, 1977, the Court has determined that the plaintiff is entitled to summary judgment on its complaint and to judgment in the amount of $285,938.10, which is the principal amount due and owing under the contract, plus interest. As stated above, the Court earlier declined to grant summary judgment for the plaintiff on the basis that there was an issue of material fact with regard to whether or not plaintiff had duly performed under the contract. The Court has now determined that this issue is not relevant to its decision (see discussion below) and, therefore, summary judgment should now be granted for the plaintiff.

The agreement of August 23, 1973, provides:

"Gathright Dam—Corps of Engrs contract DACW–65–70–C–0075

"Agreement the Lakeside Bridge & Steel Co. accepts a backcharge of $11,-317.00 covering direct costs incurred to date for corrective work on the material supplied by us for Gathright Dam plus a maximum backcharge due to the delays resulting from this corrective work of (35 days at $390 per day) $13,650.00. This backcharge of $13,650.00 due to delays is to be reduced by any calendar days times $390.00 per day that the Corps of Engineers grants to Mountain State Construction Co. as time extensions to their contract completion date for occurances [sic] during the period from August 7, 1972 to September 22, 1972."

Prior to the meeting on August 23, 1973, defendant had informed plaintiff that it was having difficulty with the field installation of materials fabricated by the plaintiff, including the sluice gates, the splash plate liner, the sluice gate liner, and the water quality control liner, and that it had suffered construction delays as a result. Defendant's answer to interrogatory number 9(c) indicates that defendant had completed all corrective work on the materials supplied by plaintiff by July 1973. Two meetings were thereafter held between rep-

resentatives of the plaintiff and of the defendant, on August 8 and August 23, 1973, to discuss the alleged defects in the materials. As all of the witnesses testified, all of the claimed items of damage and alleged defects in the materials were discussed at those meetings. (Tr. at 25, 26, 77, 78, 108, 119, 125–26, 142, 148.)

The final figure of $11,317.00 set forth in the agreement is close in amount to the figure computed by Mr. Swanson, an employee of defendant, during the August 23 meeting as being the cost incurred by defendant for repair work on the sluice gate liner and water quality control liner. (See Exhibit 5.) Defendant asserts that this similarity in amount indicates that the agreement was intended to cover only those two items; indeed, only a portion of the damages for those two items, and not the major alleged item of defendant's costs, i. e., the sluice gates.

There is no such limitation on the face of the agreement itself, however, which rather purports to cover "all direct costs incurred to date." Thus, the similarity of figures is equally indicative of a determination, or a compromise reached in the course of negotiation, that defendant had in fact suffered no other damages attributable to plaintiff's supplying nonconforming materials. Despite defendant's present assertion that it did not intend to compromise its claim on the sluice gates, the evidence presented to the Court indicates that the gates were discussed at the two August meetings and that defendant did not attempt to except the gates from the settlement reached, nor did it ever present a claim in a specific amount to the plaintiff in reference to the sluice gates. In fact, there was no evidence presented that defendant presented any claims in a specific amount to the plaintiff, excepting that one which was provided for in the written agreement.

Defendant attempts to argue that by agreeing to look into the possibility that defendant's difficulties with the sluice gates resulted from faulty specifications provided by the Corps of Engineers, plaintiff was accepting liability for the problems in the event that the Corps turned out not to have been at fault. The Court finds this reasoning unconvincing. Plaintiff's actions indicate, on the contrary, that plaintiff was not accepting liability and that defendant had agreed to look elsewhere for relief.

■ Defendant also argues that the agreement was not intended to cover indirect costs incurred by defendant. The language of the agreement, however, covers direct costs and, in addition, provides for "a maximum backcharge due to the delays" caused by such corrective work. That language is sufficiently broad to cover indirect costs; furthermore it would appear to be all-encompassing, and there was no testimony which would suggest that the subject of indirect costs was excepted from the August discussions.

■ Finally, the lack of formal language of release or settlement in the agreement does not mean that the agreement was merely a unilateral acceptance of partial liability by Lakeside. The agreement was the culmination of a process of negotiation; it was signed by the president of defendant who is a lawyer and businessman of considerable experience, and he later affirmed the import of the agreement as a bilateral understanding between the parties in a letter dated November 15, 1973, directed to Mr. Behnke. (See Exhibit 7.)

In sum, the Court finds that the August 8 and August 23, 1973, meetings were negotiation sessions held for the purpose of discussing all items of damage which defendant claimed to have suffered up to that time as a result of plaintiff's supplying allegedly nonconforming materials, that all such items were in fact discussed, that defendant did not reserve any claims for later discussion or negotiation, and that the August 23 written agreement was the culmination of and was intended as the final settlement of all such claims. Therefore, the Court also finds that parol evidence would not be admissible at trial in reference to the counterclaim of the defendant Mountain State Construction Co., Inc., against the plaintiff Lakeside Bridge & Steel Co., and that defendant's counterclaim should be dismissed.

In the pretrial stipulation submitted to the Court by the parties on February 11, 1977, the statement of contested issues is set forth as follows:

"II(a) Did the material fabricated by plaintiff and sold and delivered to defendant conform with the applicable plans and specifications of the United States Army Corps of Engineers?

"(b) Did the parties, in the August 23, 1973, handwritten document * * * agree to a full and final settlement with respect to the damages allegedly sustained by defendant?

"(c) Is plaintiff entitled to interest, and, if so, at what percentage?"

■ Item (b) has been discussed above and no longer remains an issue in this suit. As to item (a), it has no relevance to the matters raised in the complaint. The Court has determined that the August 23, 1973, handwritten agreement was intended as a final settlement of all of defendant's claims for damage against the plaintiff for supplying nonconforming materials, including any claims defendant might have had for nonconformity of materials to the specifications of the Army Corps of Engineers. The parties have agreed in their statement of uncontested facts submitted to the Court on February 11, 1977, that "I(c) [p]laintiff has duly fabricated & timely shipped the materials provided for in the contract of July, 1970, as amended, except that condition precedent, i. e., whether the materials supplied by plaintiff conformed to the specifications of the Army Corps of Engineers * * *," and, therefore, the Court finds that plaintiff is entitled to judgment in the full principal amount. The parties are agreed that the total principal sum under the contract, as amended, was $1,281,750 (see Paragraph 7 of the affidavit of Dean Lewis, filed January 17, 1975, and Paragraph 8 of the affidavit of Gordon Behnke filed December 5, 1974), and that defendant has paid plaintiff the amount of $995,811.90 (see item I(d) of statement of uncontested facts filed February 11, 1977). Therefore, plaintiff is now entitled to entry of judgment in the principal sum of $285,938.10.

One final issue remains for the Court's consideration. The plaintiff claims that under the terms of the agreement entered into between the parties, it is entitled to interest at the rate of 1% per month on amounts past due under the contract. It claims interest due in the amount of $82,439.19 as of November 14, 1973, the date the complaint was filed, plus interest at the rate of $90.27 per day thereafter. The defendant denies that the agreement between the parties provided for interest on amounts past due.

In part III entitled "Exhibits" of their pretrial report to the Court on February 11, 1977, plaintiff and defendant agreed:

"(b) The following documents, or copies thereof, are admissible and constitute the written agreement, as amended, between the parties with respect to the purchase and sale of the material involved in this action:

"(1) Plaintiff's Proposal No. 00354, dated June 8, 1970;

"(2) Defendant's Purchase Order No. 402, dated July 7, 1970;

"(3) Letter dated July 28, 1970, from Mr. Robert K. Shaw of plaintiff to Mr. J. F. Hill of defendant; and

"(4) All written change orders and writings evidencing or constituting amendments to the plans or specifications of the United States Army Corps of Engineers."

Plaintiff's proposal No. 00354 is a six-page document containing quotes for bid items 34, 35, 37, 38, 51, 52 and 53 in a total amount of $1,597,090.00. A printed provision on page one states that "this proposal is not an offer"; however, the typed-in provisions on pages two through six refer to the document as "this offer." In the paragraph on page six entitled "Terms of Payment" it is stated that payment for 90% of the value of work shipped by the 25th of the preceding month shall be made before the 10th of each month, and that "[a]mounts past due shall bear interest at the rate of 1% per month." Defendant's purchase order No. 402, dated July 7, 1970, is an order for items 34, 35, 38 and 51 at a total price of $1,260,000, "per your quota-

tion dated June 8, 1970." The order also contained a liquidated damages clause for delay not beyond the seller's control. On July 28, 1970, plaintiff wrote to defendant and enclosed a signed copy of defendant's July 7, 1970 purchase order No. 402. The letter indicated that plaintiff had accepted the order except for the liquidated damages clause which plaintiff stated it could not accept. The deletion of the liquidated damages clause from the parties' agreement was subsequently acceded to by defendant.

█ Plaintiff argues that the language "per your quotation dated June 8, 1970," which is contained in defendant's purchase order No. 402, expressly incorporates the provision which is contained in plaintiff's proposal No. 00354 for 1% monthly interest on amounts past due. Defendant argues that the "per your quotation" language is simply a reference to the document from which the prices were obtained and not an incorporation of all of the terms of that document.

Since there is no dispute as to which documents constitute the contract, it becomes a matter of law for the Court to determine the proper construction of the contract. *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921 (1975); *Breiby v. Department of Administration*, 55 Wis.2d 16, 197 N.W.2d 737 (1972). The Court is of the opinion that the contract includes the provision for payment of interest on amounts past due. It is apparent that the plaintiff intended the terms and conditions set forth on page six of its proposal No. 00354 to be part of the contract and that it did not offer the quotations for bid items 34, 35, 38 and 51 as quotations acceptable apart from the terms and conditions set forth. It is also apparent that had the defendant wished to do so, it could have expressly limited its purchase to the quoted prices and rejected the proposed terms and conditions.

The office of judicial construction of contracts is not to make contracts or to reform them but to determine what the parties agreed to do, in a legal sense, as evidenced by the language they saw fit to use. *Miller v. Miller*, 67 Wis.2d 435, 227 N.W.2d 626

(1975); *North Gate Corp. v. National Food Stores, Inc.*, 30 Wis.2d 317, 140 N.W.2d 744 (1966). Occasionally the words which parties choose *not* to use may be as instructive as the words which they do use, *North Gate*, supra, at 323, 140 N.W.2d 744. The Court finds in this case that by using the language "per your quotation of June 8, 1970," and by failing to indicate in writing, if such was its intent, that the terms and conditions of the June 8 proposal were not acceptable to the defendant, the defendant as a legal matter agreed to the provision for payment of interest on amounts past due.

For the foregoing reasons,

IT IS ORDERED that the counterclaim of the defendant Mountain State Construction Company, Inc., is dismissed.

IT IS FURTHER ORDERED that summary judgment on its complaint is granted to the plaintiff Lakeside Bridge & Steel Company.

IT IS FURTHER ORDERED that the clerk of court for the United States District Court for the Eastern District of Wisconsin enter judgment for the plaintiff Lakeside Bridge & Steel Company against the defendant Mountain State Construction Co., Inc., in the principal sum of $285,938.10, plus interest in the amount of $82,439.19 through November 14, 1973, plus interest at the rate of $90.27 per day thereafter.