**Thomas J. DUFFEY, Plaintiff-Appellee,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Earl L. Jennings, Jr., Harold J. Yates, et al., Defendants-Appellants.**

No. 86–1130.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1987.

Decided Sept. 16, 1987.

William J. Nellis, Associate Gen. Counsel, Chicago, Ill., for defendants-appellants.

James M. Fergal, Schellinger & Doyle, S.C., Brookfield, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, and WOOD and POSNER, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

This diversity case was resolved by summary judgment on cross motions. Attorney Thomas J. Duffey, a former trustee of the Central States, Southeast and Southwest Areas Pension Fund, sued the Fund and its trustees (together "the Fund") for the sum of $12,599.81, which allegedly was the balance due to him for his time and expenses spent in preparing for and testifying in various litigated matters involving the Fund. The Fund counterclaimed for the sum of $36,865.74, claiming that Duffey already had been overcompensated and that therefore he should reimburse the Fund for the fees previously paid. The court granted Duffey's motion for summary judgment. Since the same issues were involved, the court treated the Fund's counterclaim as if it were pending on the Fund's cross motion for summary judgment and awarded Duffey judgment on the counterclaim as well.[1]

## I. BACKGROUND

Duffey's Fund duties while he was still a trustee consisted in part of screening or causing to be screened applications for loans or modifications of existing loans so he could recommend appropriate final action to the other trustees. He became particularly involved in the granting of five loans totalling $42 million to the Aladdin Hotel Corporation in Las Vegas, Nevada, during the years 1972 through 1976.

Those loans became the focus of considerable attention by the government and others. It became apparent to the trustees that the Fund likely would be seriously involved in widespread litigation, both civil and criminal, which could continue even after the individual trusteeships had terminated. The trustees, anticipating these serious legal diversions that could threaten their future financial interests, sought protection by adopting a resolution applicable to the various loans. The resolution provided generally for reimbursement to a trustee for costs arising out of testimony or providing information about the Fund in any Fund-related investigation, trial, or other proceeding. "Costs" was defined as including "reasonable attorneys' fees."[2]

---

1. It was the Fund's position at oral argument that in order to be consistent about there being a material factual dispute it would not claim to be entitled to summary judgment on its cross motion.

2. The pertinent part of the resolution provided in full:

All proper and necessary expenses incurred by any former or incumbent Trustee, including costs of defense and litigation arising out of the Trusteeship of this Fund, and also including costs incurred by any former or incumbent Trustee in providing testimony or information about administration of this Fund in any investigation, trial or other proceeding, shall be paid out of the Trust Fund, as a matter of right of any such former or Incumbent Trustee to the extent permitted by

The resolution soon proved convenient to Duffey as he began to be very busy preparing for and appearing at various places in different Fund-related matters, including several federal grand jury investigations.[3] As this developed, Duffey in 1977 wrote to Daniel Shannon, a representative of the Fund, about reimbursement under the resolution. Duffey received in reply a letter about the process to be followed and the information to be supplied.[4]

Thereafter in accordance with that arrangement Duffey from time to time submitted detailed statements entitled "For Services Rendered, Time Expended and Costs Advanced." The statements described his itemized charges covering such services as reviewing transcripts, telephone conferences and other preparation, travel, correspondence, testifying, etc., indicating the time consumed with each charge. The statements summed up the charges as "Total Attorney's Fees." The fees due were computed at Duffey's rate of $100 per hour multiplied by the total of the hours spent, plus Duffey's out-of-pocket expenses. Duffey deducted from that total any overlapping reimbursement he had received from the government, since he was on occasion subpoenaed by the government.

Submitted on statements in that general form and paid in full by the Fund at various times was something in excess of $44,000. The counterclaim sought to recover about $37,000 of that sum as an over-payment. There appears to have been no problem with Duffey's compensation until he submitted his final bill for $12,599.81, which was connected with the second trial of one of the matters.

## II. ANALYSIS

The Fund argues on appeal that summary judgment was inappropriate to dispose of the complaint and counterclaim, asserting there are material factual disputes.

The Fund argues first that there is a fact issue about the intended meaning of the compensation agreement, which it says was misconstrued by the trial judge. The trial judge found that Duffey was not an ERISA-defined "fiduciary" after his trusteeship had terminated, but was instead a party in interest for ERISA purposes and was therefore entitled to reasonable compensation. Accordingly, the judge found Duffey's services were necessary and reasonable for the operation of the plan.[5]

The Fund claims that the intended meaning of the compensation paragraph is a material issue in dispute and a jury question, arguing that it was misconstrued in its text as well as contrary to the intent and practice of the parties. The Fund points out that the letter from the Fund to Duffey in response to his prior inquiry shows the error. Duffey had asked whether he was entitled to reimbursement of income lost as a result of his time spent preparing and giving testimony in Fund-re-

applicable law. As used in the preceding sentence, the term 'costs' includes but is not limited to reasonable attorneys' fees.
Article IV, Section 6 of the Pension Fund Trust Agreement.

3. Those Fund-related matters included federal proceedings in the Northern District of Illinois, the District of Nevada, and the Eastern District of Michigan, federal grand jury proceedings in Las Vegas, Nevada, Detroit, Michigan, and Newark, New Jersey, and United States Department of Labor administrative depositions.

4. The Fund's letter in relevant part stated:
At the meeting of the Board of Trustees on March 16, 1977, the Trustees considered the question you discussed last week with Bill Nellis, i.e. whether the trust agreement entitles you to reimbursement of income lost as a result of your time spent in preparing and giving your testimony at a Fund-related trial or proceeding. Relative to your current Department of Labor billing, and for the future, I would appreciate receiving from you your written confirmation as follows:
1. That your regular hourly rate for legal services is identical to the rate charged to the Pension Fund;
2. That the hours you have charged the Pension Fund were not charged to or compensated by any other source; and
3. That you have sustained an actual loss of income equal to the amount charged to the Pension Fund, because of this time spent on a specific Pension Fund matter.

5. The Fund is an employee pension benefit plan under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Neither party on appeal directly raises an ERISA issue.

lated matters. The Fund answered the question in a letter requesting certain information relative to Duffey's billings: (1) that Duffey's hourly rate for legal services would be the same as he had charged the Fund; (2) that the hours charged to the Fund were not compensated by some other source; and (3) that Duffey had sustained an actual loss of income equal to the amount charged the Fund. The Fund now argues Duffey suffered no loss of income, because his firm had $12,000 a month in retainers received from other clients totally unrelated to the Fund.

We see no need to impanel a jury to interpret the compensation arrangement. When interpreting a contract a court must determine the intent of the parties, which may be found in the language of the contract. If there is a conflict in interpretation because some part is susceptible to more than one meaning, the court will look to the practical construction applied by the parties in performing under the agreement, which is highly probative of intent. *William B. Tanner Co. v. Sparta-Tomah Broadcasting Co.*, 716 F.2d 1155, 1158–59 (7th Cir.1983) (citing *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 435, 234 N.W.2d 921, 926 (1975)). If there is no dispute about which documents constitute the contract, the contract may be construed as a matter of law. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 446 F.Supp. 1163, 1168 (E.D.Wis.1978), *rev'd on other grounds*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

The wording of the compensation paragraph is not offended by the parties' past performance under the agreement, which serves as the best indication of the parties' mutual interpretation. Duffey billed the Fund nine different times in detail, showing the date, service, time, and computations of his fees at his usual hourly rate, and the Fund paid him without dispute. Although the tenth bill was in similar form, the Fund refused to pay. The pattern of past dealings of the parties and the word-

ing of the resolution providing for attorneys' fees supply all the interpretation that is needed in this instance.

The Fund next argues that a material fact issue remains about the reasonableness of the Duffey charges on this tenth bill. Duffey set forth in detail the basis of his charges in the affidavit underlying his motion for summary judgment. The Fund's argument is based on an affidavit of attorney James L. Coghlan, an associate of counsel who represented the Fund. Coghlan's affidavit does not dispute the dates, the services, the particular hours expended, or the $100 an hour rate, but in a general and conclusory way argues that Duffey is entitled only to certain expenses. His principal point seems to be that Duffey failed to credit the Fund for the other income from his monthly retainers.

We consider Duffey's unrelated income to be unrelated to the issues of this case. An attorney with substantial retainers from other sources is not obligated by that good fortune to contribute his services to his other clients. The Fund seems to take the position that the Fund in effect owes Duffey nothing unless the work related to the Fund caused Duffey to lose his retainers. Monthly retainers are paid whether actual service is rendered in any one month or not, however, and impose no restrictions, absent a conflict of interest, on earning additional fees by service to other clients.

Since Duffey's detailed affidavit is not specifically attacked in any particular regard by the Fund's counter-affidavit or any of the Fund's other submissions regarding Duffey's claim, those documents are insufficient to raise any genuine issue of material fact. Fed.R.Civ.P. 56(c); *see First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("[c]onclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact"). Duffey's last statement for services is related to the

prior statements, and appears to be in line with all of his prior submissions that were fully honored. If the Duffey statement is incorrect in some respect, that error has not been identified or disputed sufficiently to raise a question of material fact. This case was ready for summary judgment and correctly decided.

We see no reason why Duffey should not be paid in full the balance claimed.

AFFIRMED.