INTERNATIONAL UNION OF OPERAT-
ING ENGINEERS, LOCAL UNION
965–965A–965B–965C–965RA, an unin-
corporated organization, Plaintiff–Ap-
pellee,

v.

ASSOCIATED GENERAL CONTRAC-
TORS OF ILLINOIS and Calhoun
County Contracting Corporation, and
Halverson Construction Company, De-
fendants–Appellants.

Nos. 87–1037, 87–1038, 87–1117
and 87–1118.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1987.

Decided April 26, 1988.

Patricia C. Benassi, Benassi & Benassi,
P.C., Peoria, Ill., *for defendants-appellants.*

Mark W. Weisman, Suelthaus & Kaplan,
P.C., St. Louis, Mo., *for plaintiff-appellee.*

Before CUMMINGS, WOOD, and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is a consolidated appeal of two cases that present the same issue: whether summary judgment compelling the defendants to submit the plaintiff's grievances to arbitration was appropriate. The defendants, Associated General Contractors of Illinois (AGC), Calhoun County Contracting Corp. (Calhoun), and Halverson Construction Co., Inc. (Halverson), argue that summary judgment was inappropriate because a genuine issue of material fact existed as to whether the defendants had recognized the plaintiff Union as the exclusive bargaining representative at the sites where the grievances allegedly arose. They also assert that the underlying representational dispute respecting the scope of the bargaining unit deprived the district court of subject matter jurisdiction. The plaintiff disputes these arguments and has cross-appealed from the district court's order denying attorneys' fees and costs. We affirm.

## I. FACTUAL BACKGROUND

Because this is an appeal of a grant of summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the nonmovant defendants. *Ristoff v. United States*, 839 F.2d 1242, 1243 (7th Cir.1988).

The defendant AGC is an association of employers engaged in the building and construction industry in Illinois that represents certain member employers in collective bargaining with various labor organizations. The plaintiff Union is an unincorporated association that represents its member employees for purposes of collective bargaining with respect to wages, hours, and other terms and conditions of employment.

Defendant Calhoun is a member of AGC, which represents it in collective bargaining. Calhoun is a Delaware corporation engaged in the building and construction industry performing work on roads, bridges, and sewers. This work takes place at various job sites in Illinois. Calhoun uses heavy construction equipment, the repair and maintenance of which is sometimes performed at or near the construction site. The repair and maintenance work also may occur at Calhoun's permanent yard/shop adjacent to Calhoun's offices in Springfield. The Union, AGC, and Calhoun were parties to a collective bargaining agreement which was in effect from May 1, 1983 to April 30, 1985.

On June 25, 1984, Calhoun hired a mechanic helper to work in its permanent yard/shop. Calhoun did not obtain this employee through the referral procedures set forth in the agreement between the parties, and the company has not applied the terms of the agreement to this employee, who has worked exclusively at Calhoun's permanent yard/shop. On October 26, 1984, the Union submitted a grievance to AGC regarding Calhoun's failure to follow the Union referral procedure in hiring this employee.

Defendant Halverson is an Illinois corporation that is also engaged in the building and construction industry in Illinois, performing work at various construction sites in the state. It is a member of AGC; AGC represents the company in collective bargaining. Halverson uses heavy construction equipment which is sometimes repaired and maintained at or near the construction site. Prior to July, 1984, Halverson maintained a permanent yard/shop at a one-acre site in Springfield. At this permanent yard/shop, the company stored various pieces of heavy construction equipment. Halverson sometimes performed minor repair and maintenance on the equipment at the permanent yard/shop, and sometimes used the equipment to load and unload construction material. The Union, AGC, and Halverson were parties to a collective bargaining agreement which was in effect from May 1, 1983 to April 30, 1985.

In July, 1984, Halverson relocated its permanent yard/shop to a ten-acre site. On July 21, 1984, a Halverson supervisor operated a piece of heavy construction equipment, known as a cherry picker, at the old permanent facility. The supervisor

used the cherry picker to load steel beams for movement to and storage at the new permanent facility. The Union filed a grievance regarding the company's use of a supervisor rather than a Union employee to perform this work. The company, which asserts that it does not recognize the Union at its permanent facilities, refused to arbitrate this grievance.

On April 11, 1985, the plaintiff Union filed two suits, one against AGC and Calhoun and the other against AGC and Halverson, to compel arbitration of the Union's grievances pursuant to the collective bargaining agreement.

## II. DISCUSSION

### A. Duty to Arbitrate

The district court granted plaintiff's motion for summary judgment, ordering the defendants to submit the Union's grievances to arbitration. The defendants argue that summary judgment was inappropriate because there was disagreement between the parties as to whether the Union is the bargaining representative of employees in the defendants' permanent facilities and, therefore, whether there was any agreement to arbitrate disputes of this type. The evidence of this disagreement, defendants assert, was sufficient to require submission to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

As both plaintiff and defendants recognize, a party cannot be required to arbitrate any dispute that it has not contractually agreed to submit to arbitration. *AT & T Technologies, Inc. v. Communica-*

*tions Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The question of arbitrability is a question of law for the judge to decide. *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1419; *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. In deciding the arbitrability of the grievance, the court is not to look to the merits of the underlying claims. *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1419. The presence of an arbitration clause in the collective bargaining agreement gives rise to a presumption of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1353, *quoted in AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419.

The collective bargaining agreement provided in Article VI, the section of the agreement dealing with arbitration, that "[t]here shall be no strike or lockout on account of any difference of opinion or dispute which may arise between the Employer and the Union relative to the interpretation of this agreement." Differences of opinions or disputes, other than jurisdictional disputes, are instead to be submitted to arbitration. The agreement by its terms applies to "[a]ll public or private construction, demolition, alteration, repair, maintenance, excavation, production and other work performed by the employers," and the craft jurisdiction of the Union is very broad.[1] The defendants have not overcome

---

1. Article I of the agreement, covering craft jurisdiction, provides as follows:

   It is mutually understood and agreed by the parties hereto that the craft jurisdiction of the Union shall cover and apply to all persons engaged in performing the following duties or classifications of work:

   All persons engaged in erecting, dismantling and repairing, operating or assisting in operating, erecting, dismantling, or the repair of, all hoisting and portable machines, all refrigerating machines or units and engines used on open and heavy construction work; all hoisting and portable machines and en-

gines used in or upon wrecking, digging, boring, and erecting, foundations, tunnels and subways, dams, reservoirs, bridges, railroads, streets (paving and repair), road building construction (including grading and repair), sewers, water, gas and oil lines, underground cables, allotment development construction, harbor and river dredging, the construction and repair of all docks, wharves, piers, and seawalls; all sand, gravel and stone pits; quarries and material yards (permanent and temporary), sand, rock and gravel screening machines; motor generators (when used for welding and cutting or for converting or

the presumption of arbitrability of the Union's grievances.

There is no language in the contract that limits its terms to on-site construction work, as the defendants suggest. They point out the last line of Article I applying the craft jurisdiction to "highway/heavy and utility construction work." *See supra* note 1. Although plaintiffs seem to suggest that this language demonstrates that the agreement does not cover permanent facilities, the phrase does not inevitably lead to that conclusion. Viewed in context, Article I describes the kinds of work covered by the agreement, not where such work takes place.

Defendants also note that Article II-A, dealing with applicant referral, requires the employer seeking referral to inform the Union of "(c) the location of the project [and] (d) the nature of the construction project." From this the defendants induce that the Article "expressly applies only to construction sites." The Article, however, concerns only information that would "enable the Union to make proper referral of applicants." The Union would need to

know the location and nature of the project in order to refer appropriate applicants. The fact that the word "construction" appears before the word "project" reflects the fact that much, if not most, of the work performed by operating engineers is in connection with a construction project. But a request that the employer supply information on the particulars of the construction project does not imply that the employer may not request referrals for repair work in its shop.

Article III provides exceptions to the agreement for "permanent sand and gravel pits, permanent rock quarries, permanent ready mixed concrete plants and permanent material yards." This list of exceptions does not include permanent repair or storage sites. Defendants have not suggested that Article III has been interpreted to include such sites, but instead rely only on the language of the agreement. None of these excerpts demonstrate that the parties' dispute falls outside the scope of the bargaining agreement.

In support of its contention that its grievances are arbitrable, the plaintiff submitted

transforming electric currents, irrespective of their motive power); all machines used to sweep, clean and remove debris and snow from streets and roads; all mine hoists, telphers, grab buckets, pumps, siphons, pulsometers, generators, concrete mixers (irrespective of capacity), concrete pumps of all sizes and capacities, stone crushers, air compressors, all watertest and blasthole drilling machines; all sandblasting and other machines and boilers used in the cleaning and washing or for the heating of materials or heating water, or furnishing steam for the operation of all machines, engines and other appurtenances herein specified; all locomotive, tractor and truck type cranes; all derricks, boom hoists (of all descriptions and capacities), and automatic hoists; all street rollers, steam and other motive power shovels; all LeTourneau and other types of scoops, pull shovels, mucking machines, draglines and cableways; all clamshell and orange peel buckets when used in connection with any machine or derrick or boom hoist for excavating, handling, storing, loading or unloading materials; all land and floating pile drivers, floating derrick barges and boats, floating and self-propelled dredges and rock drilling plants; all dinkey and standard locomotives, derrick cars, tractors and all tractor-propelled machinery; all power and elevator graders, scarifiers, bulldozers, Barber Green loaders, all trenching and ditching machines, all mechanical hoe-type machines, backfillers and conveyors; all cranes, including overhead cranes, derricks, machines, engines, and boilers used in asphalt and concrete mixing plants and all other engines and machines (irrespective of motive power) used on construction work which shall specifically include all fork lifts; wheel types, track types, either gas, diesel or electric, all water pumps, irrespective of horsepower, gas, diesel, electric, or air, all motor driven welders, generators, or light plants, gas, diesel or electric driven, self-propelled sheepsfoot or compaction roller of any types or size, irrespective of horsepower; pulverizer, or vibratory compactors, helicopter service when used in lieu of equipment covered by this agreement, mechanical space heaters, auto-grade; formless , autograde placer, vibratory hammer (power source) and finisher and similar equipment, or in the loading, unloading or storage of commodities at or in terminals and all other engines and machines ·within the craft jurisdiction of the Operating Engineers on highway/heavy and utility construction work.

Additionally, Article VII, dealing with wage scales, specifically includes the operators of cherry pickers, and mechanics and mechanics helpers, workers the Union suggests would have performed the ‚work at issue here.

**708**

affidavits from Lyman Ginder, former business manager for the Union, and Hugo Zahn, Union business manager at the time the suit was filed. Ginder's affidavit states that while he was business manager of the Union mechanic work performed in the employer's shops was covered by the collective bargaining agreement with AGC and its members, and the Union referred mechanics to work both on site and in the shop. According to Ginder, several employers with large repair shops had separate shop agreements. Ginder stated that during contract negotiations in 1983, the AGC and its members, with a view toward limiting the Union's jurisdiction to on-site construction, attempted without success to delete from the collective bargaining agreement language that gave the Union jurisdiction over all the employer's work. The Union rejected these proposals.

Zahn's affidavit states that the last sentence of Article XIV of the collective bargaining agreement was added in 1969 for the purpose of ensuring that all repair work on equipment used by operating engineers would be covered by the agreement. That sentence reads as follows: "Repair work performed on equipment operated by operating engineers and repaired in owners shop is the craft jurisdiction of the Local union." Zahn also states that since 1967 at least nine mechanics have been referred by the Union to perform work in the employer's permanent shop. Two of these mechanics, referred by the Union and covered by the collective bargaining agreement, were employed by Calhoun at the time of suit, according to Zahn. Zahn acknowledged that the Union has a separate shop agreement with several employers, but he also mentioned that several other employers' permanent shop mechanics were covered by the collective bargaining agreement at issue here. Zahn described the AGC's unsuccessful attempts to limit the agreement to on-site construction in 1985 contract negotiations. The Union had rejected the AGC's proposals.

The defendants support their contention that the Union's grievances are not arbitrable with several affidavits. The Director of Labor Relations for AGC, Eric Fields,

stated that two types of agreements were used by the Union: "construction agreements" of the kind at issue here covered only on-site employees or workers at temporary facilities; "shop agreements" applied exclusively to work performed at permanent facilities. Five officers of five firms stated that the collective bargaining agreement at issue here did not apply to workers at their permanent shops. Either no agreement covered these workers, or they worked under a separate shop agreement. Harry Rimbey of Calhoun and Vern Halverson of Halverson each submitted affidavits stating that their firms had never recognized the Union at their permanent facilities. Neither had entered into a shop agreement, and each had employed both Union and non-Union employees at its permanent shop.

The defendants' affidavits amount to little more than conclusory statements that the collective bargaining agreement does not cover the workers involved in the grievances. "Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985); *Duffey v. Central States, S.E. & S.W. Areas Pension Fund,* 829 F.2d 627, 630 (7th Cir.1987). One of the plaintiff's affidavits raises the specific issue that language in the collective bargaining agreement dealing with repairs in owners' shops was added to ensure that this work would be covered by the agreement. The defendants fail to refute this assertion. Moreover, both of plaintiff's affidavits mention the defendants' unsuccessful attempts in earlier negotiations to limit the agreement in the way they now suggest it is limited. The defendants' general denials of recognition fail to address in any meaningful way the plaintiff's specific allegations. They thus do not raise a genuine issue of material fact. We find that summary judgment compelling the defendants to arbitrate the Union's grievances was appropriate.

*B. Jurisdiction*

■ The defendants suggest that the district court lacked subject matter jurisdic-

tion over this dispute because it is essentially concerned with representational issues. Questions of representation, under section nine of the National Labor Relations Act, 29 U.S.C. § 159 (1982), are matters for the National Labor Relations Board. *NLRB v. Paper Mfrs. Co.*, 786 F.2d 163, 166–67 (3d Cir.1986). The defendants acknowledge that the Union's grievances do not raise representational issues but they assert that the Union's demands would force the defendants to consider and resolve grievances regarding employees the Union does not represent. The defendants argue that they are not obligated to entertain such grievances. *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 164, 92 S.Ct. 383, 389, 30 L.Ed.2d 341 (1971); *NLRB v. Bay Shipbuilding Corp.*, 721 F.2d 187, 190 (7th Cir. 1983).

This argument is without merit. The Union does not contend that it represents the two employees involved in the dispute. Instead it alleges that the individuals were engaged in work which was within the Union's jurisdiction and thereby deprived its members of bargaining unit work. The Union seeks to enforce its rights for the benefit of the employees already within the unit, not for the benefit of the two involved in the dispute. The defendants' assertion that "[i]n seeking to enforce provisions of its collective bargaining agreement as to individuals performing work at the permanent yards here at issue, the Union is doing nothing more than attempting to represent individuals at these sites" is misleading. To the extent the defendants assert that the Union is seeking to represent specific non-Union employees, they are incorrect. The Union does not seek to enforce its agreement as to the individuals performing the work. The Union seeks to compel the employers to honor the agreement for the benefit of workers who are within the bargaining unit. The issue here is not representational, and, therefore, not jurisdictional. The district court had proper subject matter jurisdiction to entertain the suit.

## C. Attorneys' Fees

■ The magistrate, in his recommendation to the district court, suggested that plaintiff's attorneys' fees and costs should be awarded against the defendants. The magistrate believed that the defendants' refusal to arbitrate the Union's grievances was without justification and in bad faith. The district court disagreed with the magistrate on this point, however, and declined to impose costs and attorneys' fees on the defendants. In reviewing a district court's denial of attorneys' fees our only inquiry is whether the court abused its discretion. *Singer Co. v. Skil Corp.*, 803 F.2d 336, 341 (7th Cir.1986); *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir. 1984).

The "American Rule" requires parties to bear the costs of their litigation in the absence of specific legislative or contractual authorization for shifting such costs to the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 1616, 1621, 44 L.Ed.2d 141 (1975). One exception to this rule provides that "attorney's fees may be awarded against a party who has proceeded in bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 419, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978). As we noted in *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985), "some courts have applied what appears to be a less demanding standard to fee requests in labor arbitration cases than in other cases, by giving the party successfully defending the award his attorney's fees if the opposition was 'without justification.'" *Id.* at 1168 (citations omitted). None of the cases we cited for this proposition were from this circuit, however, and in the *Miller Brewing* case we found it unnecessary to "tilt the standard rule ... toward the more liberal rule suggested" in the cited cases. *Id.* In a more recent decision we had another opportunity to consider the American Rule in the context of a labor arbitration dispute and we declined "to disturb the settled law of the circuit" because the defendants' trial position was not unreasonable. *District*

*No. 8, Int'l Ass'n of Machinists & Aerospace Workers v. Clearing,* 807 F.2d 618, 622 (7th Cir.1986).

Once again we find that there is no need for us to "liberalize" the American Rule in this labor case. We agree with the district court that defendants' arguments for refusing to arbitrate, while meritless, do not raise the implication that defendants were proceeding in bad faith. As the district court noted, the employers' position that they had never recognized the Union as the official bargaining representative at their permanent shops was not frivolous and does not justify the imposition of fees against the defendants.

## III. CONCLUSION

In light of the foregoing discussion, we agree with district court that summary judgment compelling the defendants to submit the Union's grievances to arbitration is appropriate. The defendants' arguments were not so frivolous as to warrant an award of attorneys' fees to plaintiff.

AFFIRMED.